Albert A. BALES et al., Appellants,

v.

The KANSAS CITY STAR COMPANY et al., Appellees.

Gustav H. HAUSER, Appellant,

v.

The KANSAS CITY STAR COMPANY et al., Appellees.

Nos. 17084, 17085.

United States Court of Appeals Eighth Circuit.

Sept. 10, 1964.

440

Carrol C. Kennnett and Ray D. Jones, Jr., of Jones & Kennett, Kansas City, Mo., made argument for appellants and filed. brief.

Carl E. Enggas, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., made argument for appellees and filed brief with Colvin A. Peterson, Jr., and Clayton R. Smalley and Watson, Ess, Marshall &. Enggas, Kansas City, Mo.

Before JOHNSEN, Chief Judge;. MATTHES, Circuit Judge, and HARPER, District Judge.

JOHNSEN, Chief Judge.

These appeals are from dismissals of the complaints in two actions against The Kansas City Star Company and three of its officials for treble damages and injunctive relief on alleged violations of the antitrust laws.[1] The dismissals were made upon the ground that the complaints failed to state claims on which relief could be granted. The court's opinion in relation to the dismissals is reported in Davidson v. Kansas City Star Co., D.C.Mo., 202 F.Supp. 613.

Each action was by a group of plaintiffs joining in assertion of their several. claims under Rule 23(a) (3), Fed.Rules of Civ.Procedure, 28 U.S.C.A., on the basis of common questions of law and fact. The complaints were identical except in the plaintiffs and the damage-demands involved. There was a total of

1. The suits were brought under § 4 (treble-damage provision) and § 16 (injunctive-relief provision) of the Clayton Act, 15 U.S.C.A. §§ 15 and 26.

60 plaintiffs in the suits, but only seven of them have appealed.

The Kansas City Star Company is publisher of a daily newspaper in Kansas City, Missouri, the morning edition of which is known as The Kansas City Times and the evening and Sunday editions as The Kansas City Star. Distribution of the paper is made in commerce as well as locally. It is the contracts underlying the distribution system for "Metropolitan Kansas City", an area partially located in Missouri and partially in Kansas, at which the actions are directed.

The system has a structure of approximately 215 individual "motorized home delivery distributors", of which each of the plaintiffs is one. A distributor is required to enter into a written contract with the publisher by which he is allotted a certain territory or district in Metropolitan Kansas City in which to make sale and distribution of the newspaper to home subscribers.[2] On the provisions of the contract, the distributor is an independent contractor, buying newspapers from the publisher and selling them to home subscribers in his territory on a delivered basis. Thus the subscribers are customers of the distributor and not of the publisher.

The paper is sold by the distributor to a subscriber on a weekly-rate basis for the morning, evening and Sunday editions in combination. The price which the distributor must charge for such a purchase is fixed by the publisher in the distributor's contract, and this price is uniform for the Metropolitan Kansas City area. The publisher agrees to sell and deliver to the distributor the number of papers needed by him to supply his regular subscribers. The distributor agrees "to receive said newspapers and deliver them regularly and promptly each day to all subscribers at their respective addresses * * *", and by express language he "recognizes that one of the most important duties under this contract is the delivery of the papers every morning and evening * * *". The price which is to be paid by the distributor to the publisher for a paper in all its home editions per week is specified in the contract.[3]

The attack which the plaintiffs make against their distributors' contracts is centered on a provision which binds the distributor not to "sell or circulate any other newspaper, except by the written consent of (the Star), during the existence of the contract". This provision is claimed to violate § 1 (making a contract in restraint of trade) and § 2 (attempting to monopolize and monopolizing a part of trade or commerce) of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, and § 3 (requiring a purchaser not to deal in the commodity of a competitor when the effect may be to substantially lessen competition or tend to create a monopoly) of the Clayton Act, 15 U.S.C.A. § 14.

What the plaintiffs are desirous of accomplishing is to be able to sell and distribute other newspapers in Metropolitan Kansas City, and also to engage in distributing circulars and other advertising matter, without losing their distributorships for the Star. They say that they have been offered contracts and opportunities to make such other distributions, but that the Star will not permit them to do so and retain their Star distributorships.

The effect of their allegations is that their newspaper distributorships represent individual enterprises, involving ownership of equipment and other investment of capital by them in caring for their customers and routes; that it is economically impossible for anyone to engage in or carry on such a distribution

---

2. According to an earlier complaint in one of the actions, "the territory is generally limited to approximately 1600 customers, as one truck with two employees can usually efficiently operate within a geographic territory limited by that number of customers".

3. These provisions of the contract are summarized from a copy of the form admittedly used, which, while it was not attached to the complaints, has been placed before us, as it was before the District Court, for consideration on the relationship involved.

business in Metropolitan Kansas City without having a distributorship for the Star, since its circulation constitutes more than ninety percent of that of all the daily newspapers published in or reaching into the area; that plaintiffs are in a position to handle the other distributions which have been offered them without in any manner affecting the nature or efficiency of their service in making sales and deliveries of The Kansas City Star; that in refusing to permit them to do so, the Star is not only denying to other publishers "access to the only efficient and cheap home distribution system available in Metropolitan Kansas City", but is also preventing the public in the area from having the benefit or a choice of other daily newspapers; that this constitutes in the circumstances an improper restraint of trade or commerce and hence the deprival of customers and revenue to which they are thus being subjected represents an unlawful injury to their businesses; that the more so is this true because what the Star is doing has been for the purpose and with the intent of "maintaining its monopolistic position in the dissemination of news and advertising in Metropolitan Kansas City"; and that it is only because of the monopoly power and hold which the Star has and is exercising that it has been able to insist upon and compel acceptance by the distributors of the provision in the contract barring them from selling or circulating other newspapers.

As to these aspects, the District Court in dismissing the complaints held that the contract provision could not constitute a restraint of trade within the meaning of § 1 of the Sherman Act, supra, since only a restraint against the distributors and as to their "home delivery market" was involved; that beyond this, if any restraint of trade could be "inherent in the contract", the plaintiffs were not in a position to complain thereof or seek relief therefrom because as a party to the contract they would be in pari delicto with the defendants; that in further aspect no monopolizing of trade or commerce, as a violation of § 2 of the Sherman Act, supra, could be contended to exist, since all that the defendants had monopolized was the delivery of their own paper which was "a basic factor in the continued successful operation of their newspaper", and which did not preclude other newspaper publishers from engaging in a similar or other form of distribution, except that they would not be entitled to use the plaintiffs' facilities and services; and that finally, as to the violation claimed of § 3 (requiring a purchaser not to deal in the commodity of a competitor) of the Clayton Act, supra, it was unnecessary to determine whether the effect of the contract provision could be to lessen competition, since only competitors of the Star, which the plaintiffs were not, or the Government in the public interest, would have a right to make attack and seek relief on this basis.

Passing for the moment the question of pari delicto, the effect of the summary disposition made was to view as not entitled to antitrust consideration, because of the Star's legitimate interest in insuring that efficient and satisfying delivery would occur to home subscribers, the charge of the complaints that the Star's exclusive-dealer system had been set up for the purpose of enabling it to have, and was being maintained with the intent of preserving for it, a monopoly in the dissemination of news and advertising in the Metropolitan Kansas City area.

On this concept of absoluteness as to delivery interest, the court also regarded as without any antitrust relevance the further allegations of the complaints that the contract restriction was not necessary to insure and maintain the kind and quality of delivery service about which, as such, the publisher could have legitimate concern, and that the opening up of the distributors' facilities to other newspapers would not occasion any deterioration of subscriber service or relations so as to be in this respect harmful to the Star.

Of course, as the court stated, the timely and efficient distribution of its newspaper was a matter of important and legitimate concern to the Star. But, as

moted, the complaints charged that what the Star was doing went beyond this legitimate concern—on the lack of actual need therefor, on the existence of monopoly motive therein, on the improper restraint of commerce occasioned thereby, and on the deprivation to the public of other news and advertising facilities therefrom.

If, as alleged, monopolistic hold and restraint of commerce in news and advertising publication (sold to the distributors as a commodity) were intended and were effected through the restriction imposed upon the distributors in enterprise status, the question of what legitimately could be the Star's delivery concern and the needs thereof would not, we think, be entitled to be disposed of on the face of the contract provision and the complaints.

What is now before us is, of course, simply "a pleading case". It may be that the trust motive and status alleged are not able to be substantiated. It may be that whatever position in news and advertising publication the Star occupies as to the area is one of natural situation and is without any relation to the restriction in its distibutors' contracts. It may be that other aspects of subscriber relationship and protection are involved than what the complaints recognize, which can have legal significance on the contract provision. It may be that the commerce or competition claimed to be affected is so unsubstantial as not to involve an antitrust evil as to the area. Other elements and aspects also may exist which can be of relevance in the situation. But these are matters which are not apparent on the face of the complaints and which can only become known on a hearing.

Our action of reversal can sufficiently be cast in the summary expression of Mr. Justice Holmes in Hart v. B. F. Keith Vaudeville Exchange, 262 U.S. 271, 274, 43 S.Ct. 540, 541, 67 L.Ed. 977 (1923), in making reversal of the dismissal of a private antitrust action, as follows: "It is enough that we are not prepared to say that nothing can be extracted from this bill that falls under the act of Congress, or at least that the claim is wholly frivolous".

The attitude of this somewhat early case in the field seems to have been that a charge of antitrust violation, with claim of business injury therefrom, should generally be afforded the opportunity for proof to be made thereon, because of the aspect of public interest involved. Only where it is legally certain that the acts charged, in their rational implications, are incapable of constituting a violation of the antitrust laws, or where it is factually patent that the asserted claim is wholly frivolous, would a summary dismissal of the complaint be entitled to be made.

This position or policy of liberality in affording an opportunity for the development of claims of antitrust violation has been adhered to in the subsequent cases. In Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961), the court, in making reversal of the summary dismissal of a private antitrust suit alleging violation of § 1 of the Sherman Act, 15 U.S.C.A. § 1, said that "to state a claim upon which relief can be granted under that section, allegations adequate to show a violation and, in a private treble damage action, that plaintiff was damaged thereby are all that the law requires".

In White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963), where reversal was made of a summary judgment for the United States in a civil antitrust suit instituted by it on alleged violation of §§ 1 and 3 of the Sherman Act, the court observed that summary judgments can have a place in the antitrust field as elsewhere, but added that "as we warned in Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 [82 S.Ct. 486, 491, 7 L.Ed.2d 458], they are not appropriate 'where motive and intent play leading roles'". 372 U.S. at 259, 83 S.Ct. at 700. See also United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 188, 74 S.Ct. 452, 454, 96 L.Ed. 618 (1954) and Radovich v. Nation-

al Football League, 352 U.S. 445, 453, 454, 77 S.Ct. 390, 394, 395, 1 L.Ed.2d 456 (1957).

Our decision in Thomason v. Hospital Rentals, Inc., 272 F.2d 263 (8 Cir. 1959) followed this policy, as Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9 Cir., 1963) and Jewell Tea Co. v. Local Unions, etc., 274 F.2d 217 (7 Cir. 1960) also have done.

As to the trial court's declaration that the plaintiffs would in any event not be entitled to seek recovery, since they were in pari delicto with the defendants as to such restraint as might be involved, we similarly must hold that this question also is one which could not be summarily disposed of on the complaints. Plaintiffs asserted that they had been obliged to accept the restriction imposed upon them as a matter of economic coercion or business compulsion in their enterprise situation, and that they had not engaged in assisting the Star's alleged trust endeavors.

■ Of course, if the plaintiffs actually were in pari delicto with the defendants in the alleged endeavor of the Star to prevent competition and create a monopoly for itself in the area, the law should leave them where it finds them. But if they accepted the contract restriction only in business necessity and not in any sanction or furtherance of a trust endeavor by the Star, they would not be in pari delicto for purposes of the right to recover for such provable injury to their businesses as the Star's antitrust violation had occasioned. Ring v. Spina, 148 F.2d 647 (2 Cir. 1945); Jewell Tea Co. v. Local Unions, etc., 274 F.2d 217 (7 Cir. 1960). See also Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 214, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951), as quoted in 274 F.2d at 223.

■ Finally, we believe that the trial court was in error also in its view that any violation of § 3 (requiring a purchaser not to deal in the commodity of a competitor) of the Clayton Act, 15 U.S.C.A. § 14, which might exist, would not be applicable to the plaintiffs because they were not competitors of the Star. The language of § 3 does not make the prohibition against requiring a purchaser not to deal in the commodity of a competitor, "where the effect * * * may be to substantially lessen competition or tend to create a monopoly in * * * commerce", one whose benefit is given only to competitors of the seller. Certainly the imposing of such a requirement upon a purchaser can be capable of injury him in his business, from the lessening of competition or the monopoly which it can create against him as to his purchasing of goods. He may have difficulty in making proof of the injury, but he nevertheless has the right to make assertion of it under the broad remedy of 15 U.S.C.A. § 15, that "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *".

■ The complaints charged violation of other provisions of the antitrust laws, such as § 2(a) (discriminating in price between purchasers for resale) and (e) (discriminating in services and terms between prchasers for resale) of the Clayton Act as amended, 15 U.S.C.A. § 13(a) and (e). These charges related to some concessions alleged to have been made by the Star in prices, terms and services to a few distributors as a matter of favoritism. The statutory provisions thus sought to be invoked were, as the trial court held, without application in the situation, since on the plain implication of these specific provisions, the differences in allowances to purchasers for resale which they were intended to prohibit were discriminations as between competitors, which admittedly as to each other the distributors were not. This aspect of the complaints therefore requires no further consideration.

The judgment is reversed and the causes are remanded for further proceedings.

Reversed and remanded.