CREAM CREST–BLANDING DAIRIES, INC., a Michigan corporation, Plaintiff,

v.

NATIONAL DAIRY PRODUCTS CORPORATION, a Delaware corporation, Defendant.

Civ. A. No. 4337.

United States District Court
W. D. Michigan, S. D.

July 21, 1965.

---

Warner, Norcross & Judd, Grand Rapids, Mich., J. M. Neath, Jr., Grand Rapids, Mich., of counsel, for plaintiff.

Uhl, Bryant, Wheeler & Upham, Grand Rapids, Mich., Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., Gordon B. Wheeler, Grand Rapids, Mich., David J. Gibbons, Chicago, Ill., of counsel, for defendant.

FOX, District Judge.

Summary judgment motions have been filed by both parties in an action brought under Sections 15 and 26 of Title 15 of the United States Code, alleging violation by the defendant of the antitrust laws of the United States, and under Section 2 of the Clayton Act, seeking treble damages.

The specific issue which is the subject of these motions arises from the language of Section 2(a) of the Robinson Patman Amendment to the Clayton Act, 15 U.S.C.A. § 13(a), which reads in relevant part as follows:

"(a) *Price-Selection of Customers.* It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce * * *."

The facts of this case, for the purpose of this motion, are relatively brief. Plaintiff is a Michigan corporation conducting business within Michigan as a dairy and a handler of milk, milk products, and related items.

Defendant is a Delaware corporation operating in Michigan, and several other states as a dairy and handler of milk, milk products, and related items.

Plaintiff's original complaint, filed June 22, 1962, alleges price discrimination by defendant in connection with its milk and milk products. The evidence thus far before the court clearly establishes price differentials in the charge for half-gallons of milk by defendant during periods of 1961 and 1962, which are the times relevant to this action.

Defendant's Lansing, Michigan operation was, during the period involved in this action, included in defendant's geographic area known as the Michigan District, which includes areas located in Ohio.

Ultimate control over the Lansing plant reposes in officers and employees

located outside the State of Michigan. Accounting for the plant was handled by a consolidated accounting center in Detroit, Michigan, which is also where defendant's Federal Market Reports were composed.

Defendant claims, and it is not disputed, that its Lansing operation purchased, processed and sold [1] milk all during the time in question, entirely within the State of Michigan, and that, therefore, the alleged discrimination did not occur "in commerce," as required by the statute, and accordingly no cause of action is stated.

Under the holdings of Willard Dairy Corp. v. Nat'l Dairy Products Corp., 309 F.2d 943 (CCA 6, 1962), cert. den. 373 U.S. 934, 83 S.Ct. 1554, 10 L. Ed.2d 691 (1963), and Borden Co. v. Federal Trade Commission, 339 F.2d 953 (CCA 7, 1962), this court has no other course to follow than to grant defendant's, and deny plaintiff's, motion for summary judgment.

Willard involved the same defendant as appears in the case before this court, and bears essential factual similarity to this case. Judge Shackelford Miller in the opinion of the Court, wrote the following paragraph:

"In the present case, the price discrimination relied upon was by reason of sales in the area of competition and sales in and around the City of Marion, Ohio. These sales by the defendant were from defendant's processing plant in Shelby, Ohio, and were purely intrastate transactions, not interstate in character, as is necessary to impose liability under the Robinson-Patman Act. The fact that defendant also made interstate shipments from other than its Shelby, Ohio, plant to areas in which the plaintiff did not engage in business is immaterial to the issue in this case. Davidson v. Kansas City Star Company, 202 F.Supp. 613, 618–619, W.D.Mo." (309 F.2d at page 946.)

Thus, it is insufficient to show that defendant is an interstate operation; it must also be demonstrated that alleged discriminatory sales occurred in interstate, and not intrastate, commerce.

The Borden case, supra, supports the same finding. Leading textwriters are in substantial agreement with this interpretation of the Robinson-Patman Act. Kintner, An Antitrust Primer, p. 61, The Macmillan Company, 1964; Rowe, Price Discrimination Under the Robinson-Patman Act, p. 80, Little, Brown and Company, 1962.

Under the facts presently before the court therefor, there has been no showing of a violation of Section 2(a) of the Robinson-Patman Act by reason of the fact that there has been no proof that any of the alleged price discriminations occurred with relation to a transaction in interstate commerce.

Plaintiff also has a proposed amendment to the complaint before the court, seeking to introduce "related items," handled by defendant, into the case. There is proof to show that defendant ships orange juice from Florida to its Lansing plant, where it is offered for sale, again, to purchasers wholly within the State of Michigan.

There is no proof to show any alleged price discrimination with regard to this product, but it is plaintiff's contention that the entire line of dairy products handled by defendant constitutes a "commodity" under the meaning of the Act; that the "line" may thus be considered to be in interstate commerce, because at least one item thereof is; and that price discrimination as to one item of the line allows the entire line to compete unfairly, so that there is no need, under these cir-

---

[1]. The purchasers to whom defendant made the alleged discriminatory sales were: (1) Charles Thurber of Stanton, Michigan; (2) Clare Ellafritz of Lakeview, Michigan; (3) those distributors located in Michigan within the area bounded by intersection of highways number 10, 131, 96 and 27; and (4) those purchasers identified on the summary of defendant's invoices filed with the court on February 17, 1965.

cumstances, to supply proof of discriminatory pricing as to each item of the line—one is sufficient.

Plaintiff cites Moog Industries, Inc. v. Federal Trade Commission, 8 Cir., 238 F.2d 43, affd. 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370, and P. & D. Mfg. Co. v. Federal Trade Commission, 7 Cir., 245 F.2d 281, in support of this position as to "lines."

Those cases involved automobile parts dealers which sold their automotive parts as integral parts of clearly differentiated "lines," and rebates were accorded purchasers depending on the dollar volume of business within a particular line.

In the record before this court there is no evidence, other than the unsupported allegation of plaintiff, that defendant sells its products on such an integrated basis, or that any volume-based rebates are offered to purchasers.

Far more persuasive to this court is the case of Atalanta Trading Corp. v. Federal Trade Commission, 2 Cir., 258 F.2d 365. That case involved advertising allowances granted to some of the customers of the seller handling canned hams, pork shoulder and precooked Canadian bacon. It was contended that this required the seller to offer similar allowances on its entire line of pork products.

The commission's hearing examiner upheld the contention, stating that "ham is ham," and the Commission affirmed his decision. In reversing, the Second Circuit Court of Appeals said:

> "The test of products of like grade and quality was evolved to prevent emasculation of the section by a supplier's making artificial distinctions in his product but this does not mean that all distinctions are to be disregarded. Such a holding would lead to the conclusion that all articles of food are competitive, each with the other—an obvious absurdity. Merely because various articles of food are derived from a common source (in this case, the pig), should not force the vendor of a broad line of such products to market or promote all simultaneously and in an identical fashion. The dietetic habits of the consuming public are not to be controlled by judicial fiat." Id. at 371.

 Thus, it does not appear to this court that a granting of plaintiff's amendment changes the decision.

However, plaintiff has indicated a desire to seek appellate review in the event of an adverse decision at the trial level, and in order to allow plaintiff the opportunity to present its case as fully as possible on appeal and to allow the pleadings to conform to the developed facts of the case, leave to amend is hereby granted.

Plaintiff's motion for summary judgment is denied.

Defendant's motion for summary judgment is granted.

An order may be presented in accordance with this opinion.