CLAUSEN & SONS, INC., a Minnesota corporation, Plaintiff,

v.

THEO. HAMM BREWING CO., a Minnesota corporation, Defendant.

No. 3–66–269 Civil.

United States District Court
D. Minnesota,
Third Division.

Sept. 7, 1967.

Maun, Hazel, Green, Hayes, Simon & Aretz, by Joseph A. Maun, Lawrence J. Hayes, John A. Murray, St. Paul, Minn., for plaintiff.

Robins, Davis & Lyons, by Elliot S. Kaplan, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

MILES W. LORD, District Judge.

Pursuant to an order requiring a more definite statement,[1] plaintiff, Clausen &

---

1. The order requiring a more definite statement directed the filing of a second amended complaint in which:

"(a) a separate count is used for each offense of violation of federal antitrust law charged;

"(b) the essential facts, and not mere conclusions, are pleaded as to each such count to the greatest extent possible;

"(c) the statutory grounds allegedly prohibiting each claimed offense or violation are stated in each count;

Sons, Inc.,[2] filed a second amended complaint.[3] Defendant, Theo. Hamm Brewing Co.,[4] moved pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure for an order dismissing said complaint and parts thereof. Affidavits and memoranda of law in support of and in opposition to said motion have been received.

The complaint alleges generally that defendant is a corporation engaged in interstate commerce in the business of brewing beer and selling it to independent wholesale distributors; that upon each of these independent wholesale distributors defendant confers the exclusive right to sell Hamm's products within defined areas; and that plaintiff is one such independent wholesale distributor engaged exclusively in the distribution of Hamm's products in southern Minneapolis and the neighboring suburbs. The complaint, which purports to allege violations of the federal antitrust laws and seeks treble damages and injunctive relief, is comprised of four counts.

Briefly, Count I alleges as follows:

"10. On information and belief each Minneapolis-St. Paul wholesaler and distributor of Hamm's products has been induced by Hamm's to observe Hamm's specific resale prices, which resale prices have been set at artificially low price levels.

\* \* \* \* \* \*

"14. Hamm's has regularly called monthly meetings of its Twin City area wholesalers or distributors for the purpose of reminding each of its area wholesalers or distributors, including Clausen, to adhere to and not to deviate from Hamm's resale price maintenance scheme.

\* \* \* \* \* \*

"21. As a direct and proximate result of the foregoing actions of Hamm's, Clausen has been prohibited from reselling Hamm's products at prices that are consistent with sound economic and business principles and as a result thereof Clausen has been prevented from realizing a fair gross profit on the resale price of Hamm's beer products."

Count I further alleges that plaintiff was coerced to agree to abide by defendant's price maintenance scheme, alleges specific acts of defendant whereby plaintiff was thus coerced, alleges that defendant's conduct maintained the resale price of beer at so artificially low a level as to unreasonably restrain the flow of national and foreign beers into Minnesota, and alleges in conclusion that defendant's conduct violates Section 1 of the Sherman Act.[5]

Count II in brief alleges that plaintiff has desired to and has had the opportunity to distribute products which pass through the channels of interstate commerce, specifically soft drinks and Schmidt, Budweiser, Gluek, Heineken and Lowenbrau beers, but has been precluded from doing so by threats by defendant of coercion and the immediate termination of its distributorship arrangement. Count II alleges that similar restraints have been imposed on every Hamm's distributor in the Minneapolis-St. Paul area. Count II alleges that Hamm's sales constitute 35% to 50% of the industry sales in the relevant market. Count II further alleges that as a condition to allowing plaintiff to purchase Hamm's products defendant has required plaintiff to purchase from defendant unpopular and unknown prod-

"(d) the manner and amount in which plaintiff claims to have been damaged as a result of each such offense or violation are stated; and
"(e) the relationship between such violation and the alleged resulting injury to plaintiff is stated \* \* \*."

2. Hereinafter referred to as Clausen.

3. Hereinafter referred to as the complaint.

4. Hereinafter referred to as Hamm's.

5. Section 1 of the Sherman Act, 15 U.S.C. § 1, provides as follows:
"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal \* \* \*."

ucts, such as a premium beer known as Waldech and an inexpensive beer known as Buckhorn, in quantities which plaintiff did not desire and could not dispose of. Count II alleges that by the foregoing actions defendant has attempted to or has, in fact, acquired monopoly power in the sale and distribution of beer and related malt products in the Minneapolis-St. Paul area and has substantially restrained commerce by making it more difficult for interstate brewers to gain access to the Minneapolis-St. Paul market area. Count II alleges that plaintiff has lost profits as a result of the foregoing acts of defendant and that these acts constitute violations of Section 2 of the Sherman Act[6] and Section 3 of the Clayton Act.[7]

Count III in summary alleges as follows: ·

"2. Hamm's has sold Hamm's beer products to Minneapolis-St. Paul wholesalers and distributors, other than Clausen, at dock or platform prices lower than those prices charged to Clausen.

"3. Hamm's has sold and continues to sell Hamm's beer products to many Minneapolis-St. Paul wholesalers or distributors, other than Clausen upon credit terms and conditions which are not extended to Clausen and has continuously and arbitrarily refused to grant similar credit terms to Clausen notwithstanding Clausen's fine credit standing and reputation in the community.

\* \* \* \* \* \*

"8. As a direct and proximate result of the foregoing acts of price discrimination and credit preferences by Hamm's, Clausen has been unable to compete with other Hamm's distributors upon equal terms and conditions. The above acts of price discrimination and credit preferences by Hamm's have injured competition and affect interstate commerce.

"9. The foregoing acts of price discrimination and credit preferences by Hamm's have unreasonably lessened competition and tend to permit Hamm's to create a monoply in the sale of beer products in the Minneapolis-St. Paul market area."

Count III further alleges that plaintiff has suffered injury as a result of the foregoing acts of defendant and that these acts constitute violations of Subsections (a), (d), and (e) of Section 2 of the Clayton Act as amended by the Robinson-Patman Act.[8]

---

6. Section 2 of the Sherman Act, 15 U.S.C. § 2, provides as follows:
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor \* \* \*."

7. Section 3 of the Clayton Act, 15 U.S.C. § 14, provides as follows:
"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to \* \* \* make a sale \* \* \* for \* \* \* resale within the United States \* \* \* on condition, agreement, or understanding that the \* \* \* purchaser thereof shall not use or deal in the goods \* \* \* of a competitor \* \* \* of the \* \* \* seller, where the effect of such \* \* \* condition, agreement, or understanding may be to substantially lessen competition or

tend to create a monopoly in any line of commerce."

8. Subsections (a), (d) and (e) of Section 2 of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), (d) and (e), provide as follows:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for \* \* \* resale within the United States \* \* \* and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the

Count IV alleges briefly as follows:

"2. Hamm's has extracted an agreement for each of its distributors and wholesalers whereby each wholesaler or distributor, including Clausen, shall resell Hamm's products solely within those areas designated and determined from time to time, by Hamm's.

"3. From and after 1945 through April 1963, Clausen resold Hamm's beer products within and around the City of Bloomington, Minnesota. On or about April 1, 1963, Hamm's began to prohibit and has continued to prohibit Clausen from reselling Hamm's products within and around the City of Bloomington, Minnesota (except for Metropolitan Stadium) said action having been arbitrarily taken by Hamm's without the consent of Clausen.

"4. Hamm's has and continues to prohibit Clausen from reselling Hamm's products in any area of Minneapolis other than the area commonly known as the 'South Side' of Minneapolis, even though Clausen has continuously sought to resell Hamm's beer in other areas of Minneapolis and Hennepin County.

\* \* \* \* \* \*

"6. The foregoing wrongful acts of Hamm's have been tantamount to an agreement to eliminate intra-brand competition within the St. Paul-Minneapolis trade area.

\* \* \* \* \* \*

"8. The foregoing wrongful acts of Hamm's have a pernicious effect on competition and lack any redeeming value."

County IV further alleges that the foregoing acts of defendant have caused injury to the plaintiff and that these acts constitute violations of Section 1 of the Sherman Act.[9]

From the affidavits submitted by both parties, the following uncontradicted facts appear:

Defendant is engaged in a substantial interstate beer selling business;

Plaintiff's business is strictly intrastate;

None of Hamm's independent wholesale distributors in Minnesota sells beer across state lines;

All the beer products sold by defendant to its independent wholesale distributors in Minnesota in the past five years have been produced within the State of Minnesota;[10]

During the past five years defendant's share of the total wholesale beer sales to retailers in the Minneapolis and Hennepin County market area has been less than 30%;

Neither the defendant nor any other brewer selling beer products to whole-

---

benefit of such discrimination, or with customers of either of them; \* \* \*.

\* \* \* \* \*

"(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

"(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

9. Section 1 of the Sherman Act is quoted at footnote 5 supra.

10. While plaintiff alleged by complaint and affidavit that it had purchased beer from defendant's California brewery, one of defendant's affidavits states that this has not occurred within the past ten years, and this affidavit by defendant has not been contradicted.

salers in Ramsey and Hennepin Counties sells soft drink beverages to such wholesalers; and

The alleged price-fixing activities of defendant reduced the gross profit margin of Hamm's products sold by plaintiff and as a result reduced plaintiff's net profits.

The affidavits of the parties are in conflict as to whether or not Hamm's, Waldech, and Buckhorn beers are functionally interchangeable substitutes serving the same consumer markets.

■ The general rule is that a claim should not be dismissed for insufficiency of statement unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of the claim. See, e. g., Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); P. H. Machinery, Inc. v. Harnischfeger Corp., 207 F.Supp. 392 (D.C.Minn.1962).

■ There are no special rules of pleading for antitrust cases. Nagler v. Admiral Corp., 248 F.2d 319 (2nd Cir. 1957); New Home Appliance Center v. Thompson, 250 F.2d 881 (10th Cir. 1957); Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9th Cir. 1963); Bales v. Kansas City Star Co., 336 F.2d 439 (8th Cir. 1964); Louisiana Farmers' Protective Union v. Great A. & P. Tea Co., 131 F.2d 419 (8th Cir. 1942).

The Eighth Circuit philosophy of liberal pleading in antitrust litigation is amply demonstrated by the following quotation from Bales v. Kansas City Star Co., 336 F.2d at 443:

"Our action of reversal can sufficiently be cast in the summary expression of Mr. Justice Holmes in Hart v. B. F. Keith Vaudeville Exchange, 262 U.S. 271, 274, 43 S.Ct. 540, 541, 67 L.Ed. 977 (1923), in making reversal of the dismissal of a private antitrust action, as follows: 'It is enough that we are not prepared to say that nothing can be extracted from this bill that falls under the act of Congress, or at least that the claim is wholly frivolous.'

"The attitude of this somewhat early case in the field seems to have been that a charge of antitrust violation, with claim of business injury therefrom, should generally be afforded the opportunity for proof to be made thereon, because of the aspect of public interest involved. Only where it is legally certain that the acts charged, in their rational implications, are incapable of constituting a violation of the antitrust laws, or where it is factually patent that the asserted claim is wholly frivolous, would a summary dismissal of the complaint be entitled to be made."

■■ In evaluating pleadings a court should not require technical exactness and should construe the pleadings in the pleader's favor in order to do substantial justice and may draw reasonable inferences from the words of the pleading to this end. See Fed.Rules Civ.Pro. 8(f); 1A Barron & Holtzoff, Fed.Prac. & Pro., § 283 and the cases cited therein. As the Court said in Nagler v. Admiral Corp., 248 F.2d at 325, "we are not conducting exercises in pleading; we must look beyond the mere mountain of words to the meaning sought to be conveyed."

■ Defendant moves for dismissal of Count I on the ground that the required jurisdictional facts regarding the direct and substantial effect of the alleged restraint upon interstate commerce are not alleged. Defendant's contention in this regard is that the only "contract, combination * * * or conspiracy" alleged in Count I is that between plaintiff and defendant and that this single agreement is insufficient to have a direct and substantial effect on interstate commerce. This, it seems to the Court, is an extremely restricted and unreasonable interpretation of the allegations of Count I. Given the liberal rules of pleading and construction of pleadings, the construction of Count I proposed by plaintiff is more reasonable. This construction is that Count I alleges a vertical,

and a vertically imposed horizontal, price fixing combination involving not only the plaintiff and the defendant, but also all the other independent wholesale distributors of Hamm's products in the Minneapolis-St. Paul metropolitan area. Such a combination, maintaining artificially low prices, might well substantially impede the flow of interstate beers into Minnesota and thereby have a direct and substantial effect on interstate commerce. Thus, it appears that defendant is not entitled to dismissal of Count I on this ground.

Defendant also contends that Count 1 should be dismissed on the ground that the price maintenance alleged therein was accomplished entirely unilaterally and, therefore, falls within the rule of United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). However, the Court's construction of Count I, indicated in the previous paragraph, requires a rejection of this contention of defendant. The Supreme Court's reasoning in refusing to apply the *Colgate* doctrine to the facts involved in United States v. Park, Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 512, 4 L.Ed.2d 505 (1960), applies as well to the facts alleged in the instant complaint:

" * * * judicial inquiry is not to stop with a search of the record for evidence of purely contractual arrangements * * *. When the manufacturer's actions, as here, go beyond mere announcement of his policy and the simple refusal to deal, and he employs other means which affect adherence to his resale prices, * * * he has put together a combination in violation of the Sherman Act."

Defendant further contends that Count I fails to allege a causal connection between the alleged price maintenance scheme and the alleged injury to plaintiff. However, the complaint alleges that plaintiff has lost gross profits as a result of being precluded, by defendant's scheme maintaining artificially low prices, from reselling Hamm's products at prices consistent with sound business principles, and it cannot be said that under no state of facts which might be proved in support of this allegation would plaintiff be entitled to relief. Defendant contends that gross profits is an improper measure of damages; however, since plaintiff has indicated by affidavit an intention to prove loss of net profits, no useful purpose would be served by granting dismissal on this ground.

Defendant also contends that any price-fixing scheme which might have existed would have accrued to plaintiff's benefit. This contention may prove relevant at trial, but is of no relevance at this stage of the proceedings. The only statement by affidavit addressing this point contradicts defendant's contention.

■ Defendant moves for dismissal of Count II in so far as it purports to assert a cause of action under Section 2 of the Sherman Act on the ground that the essential elements for either an actual monopolization or an attempted monopolization claim for relief are not pleaded and on the ground that the required jurisdictional facts regarding the direct and substantial effect of each alleged restraint upon interstate commerce are not alleged. Count II alleges that defendant attempted monopolization and effected actual monopolization of the Minneapolis-St. Paul metropolitan area market for beer products and sets out competing brand and product prohibitions and tying agreements as acts evidencing such violations. Also supporting the attempted and actual monopolization charges are the allegations of the other counts of the complaint. Liberally construed, the allegations of Count II encompass allegation of power to fix prices and control competition and the dangerous probability of and intent to acquire such power. A sufficient allegation of damages and causal connection with alleged wrongful acts has been made. Moreover, facts might be proved in support of Count II which would establish a direct and substantial effect on commerce. It appears, therefore, that these grounds are insufficient to justify dismissal of Count II in so far as it alleges

violation of Section 2 of the Sherman Act.

Defendant moves for dismissal of Count II in so far as it purports to assert a cause of action under Section 3 of the Clayton Act on the ground that it fails to state a claim upon which relief may be granted. Defendant contends that none of the practices complained of in Count II is alleged to have been contained in any sale on condition, agreement, or understanding thereof; however, this contention is based upon an unreasonably restricted interpretation of the allegations of Count II and is, therefore, invalid. Defendant contends that soft drink beverages are not commodities of a competitor of defendant and that Waldech, Buckhorn, and Hamm's beers are functionally interchangeable substitutes serving the same consumer markets; however, these contentions cannot avail defendant upon a motion for summary dismissal because their validity depends entirely upon the evidence which presumably will be adduced in their support at trial. Defendant further contends that insufficient facts have been alleged in Count II regarding the effect of the alleged restraints upon competition, regarding the causal relationship between the alleged wrongful acts and the alleged injury, and regarding plaintiff's opportunities to distribute beers of competitors of Hamm's; however, it cannot be said that plaintiff would not be entitled to relief under any state of facts which might be proved in support of the allegations already made with respect to these matters. Accordingly, it appears that defendant is not entitled on these grounds to dismissal of Count II in so far as it alleges a cause of action under Section 3 of the Clayton Act.

Defendant moves for dismissal of Count III in so far as it purports to state a cause of action for violation of Subsections (d) and (e) of Section 2 of the Clayton Act as amended by the Robinson-Patman Act on the ground that it fails to state a claim upon which relief may be granted. Count III alleges price discrimination and credit prefer-ences. Subsections (d) and (e) proscribe discrimination between purchasers of a commodity in the furnishing of, or in payment in return for the furnishing by the purchaser of, services and facilities connected with "the processing, handling, sale, or offering for sale" of the commodity. Neither the price discriminations nor the credit preferences alleged in Count III can be considered to be services or facilities furnished in connection with "the processing, handling, sale or offering for sale" of Hamm's beer. See Skinner v. United States Steel Corporation, 233 F.2d 762, 765–766 (5th Cir. 1956), wherein the court said:

"\* \* \* The prohibition of Section 2(e) is not against every discrimination, nor even against every discrimination in the course of interstate commerce. The prohibition is against discrimination in the furnishing of 'services or facilities connected with the processing, handling, sale, or offering for sale of such commodity'. The language is not complex nor are the words technical. Neither the legislative history nor the judicial interpretation of the quoted words requires us to depart from their literal meaning. The service, furnished to Union Supply Company and denied the appellant, does not have any connection with the processing, handling, sale or offering for sale of any of the commodities which may have been sold by the appellee to Union Supply Company \* \* \*. This is a particularly apt situation for the application of the maxim 'expressio unius est exclusio alterius.' \* \* \*.

\* \* \* \* \* \*

"\* \* \* In other words, the services or facilities that must be made available on proportionally equal terms to all purchasers in competition are merchandising services or facilities. \* \* \*."

Also see Secatore's Inc. v. Esso Standard Oil Co., 171 F.Supp. 665 (D.C.Mass. 1959). Thus, it appears that Count III must be dismissed to the extent that it purports to state a cause of action for

violation of Subsections (d) and (e) of Section 2 of the Clayton Act as amended by the Robinson-Patman Act.

■ Defendant moves for dismissal of both Counts II and III on the ground that these counts fail to comply with the order of this Court requiring a more definite statement.[11] However, the Court is satisfied that these counts adequately comply with its order. While they may not comply exactly with all the specifics of that order, they clearly comply with its spirit and give adequate notice of the conduct of which complaint is made.

■ Defendant moves for dismissal of both Counts II and III in so far as they purport to assert causes of action for violation, respectively, of Section 3 of the Clayton Act and Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act on the ground that these counts fail to allege transactions in the course of interstate commerce. The sales alleged in Count II as having been made upon the condition that plaintiff comply with certain restraints were solely intrastate sales. Likewise, the discriminatory sales alleged in Count III were solely intrastate sales. Thus, no interstate transactions are relied upon in either Count II or Count III. Section 3 of the Clayton Act makes it unlawful for any person engaged in interstate commerce to engage in certain restraints *"in the course of such commerce."* Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act makes it unlawful for any person engaged in interstate commerce to engage in price discrimination *"in the course of such commerce * * * where either or any of the purchases involved in such discrimination are in [interstate] commerce."* Thus, both sections proscribe only violations "in the course of such commerce," and Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act contains the additional requirement that "either or any of the purchases involved in such discrimination" be in interstate

commerce. Defendant contends that the violations alleged in Counts II and III did not occur "in the course of such commerce" because said violations involved no interstate transactions. However, the fact that Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act expressly requires that some interstate transactions must be involved in the violation in addition to requiring that the violation must occur in the course of interstate commerce indicates that a violation can be "in the course of such commerce" without involving interstate transactions. The case of Moore v. Mead's Fine Bread Co., 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145 (1954), demonstrates the expansive construction given by the Supreme Court to the phrase "in the course of such commerce". Plaintiff in that case conducted an intrastate bakery business in New Mexico. Defendant conducted an interstate bakery business. Defendant cut prices in New Mexico but not in other states and was sued for violation of Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act. The Supreme Court held that the violation occurred in the course of interstate commerce, applying the following rationale:

"We think that the practices in the present case are also included within the scope of the antitrust laws. We have here an interstate industry increasing its domain through outlawed competitive practices. The victim, to be sure, is only a local merchant; and no interstate transactions are used to destroy him. But the beneficiary is an interstate business; the treasury used to finance the warfare is drawn from interstate, as well as local, sources * * *. If this method of competition were approved, the pattern for growth of monopoly would be simple. As long as the price warfare was strictly intrastate, interstate business could grow and expand with impunity at the expense of local merchants. The competitive advantage would then be with the interstate com-

11. See footnote 1, supra.

bines, not by reason of their skills or efficiency but because of their strength and ability to wage price wars. * * No instrumentality of interstate commerce would be used to destroy the local merchant and expand the domain of the combine. But the opportunities afforded by interstate commerce would be employed to injure local trade. * * *." Id at 119, 75 S.Ct. at 150. While the facts of *Moore* differ from those of the instant case, the above quoted rationale compels a conclusion that Counts II and III allege violations "in the course of such commerce". The beneficiary of such violations is an interstate business, the alleged violations were calculated to exclude interstate competition, and defendant's power to impose the restraint was enhanced by its interstate treasury. In Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851 (1965), the Ninth Circuit held on the basis of the *Moore* decision that certain commercial bribery had occurred "in the course of such commerce" within the meaning of section 2(c) of the Clayton Act as amended by the Robinson-Patman Act,[12] notwithstanding the fact that no interstate sales were involved and the bribery payments did not pass through interstate commerce because the bribery "created influences intrastate which in-

jured the free competitive interstate commerce in fish food." 351 F.2d at 861. In that case both the plaintiff and the defendant were manufacturers of fish food engaged in interstate businesses. Plaintiff, a Utah based producer, sued defendant, an Idaho based producer, for bribing a state official of Idaho to prefer defendant's fish food. The fish food sales by the defendant to the State of Idaho occurred entirely within intrastate commerce. The cases cited by defendant in support of its contention that the "in the course of such commerce" requirement is not satisfied unless interstate transactions are involved in the violation, are not persuasive because all such decisions rendered subsequent to the *Moore* decision either ignored that decision entirely[13] or involved Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act which section expressly requires that violations involve some transactions in interstate commerce.[14] Thus it appears that the violations alleged in Counts II and III occurred "in the course of such commerce", notwithstanding the fact that said violations involved no interstate transactions. Consequently, defendant's motion for dismissal of Count II in so far as it alleges violation of Section 3 of the Clayton Act must be denied.[15] However, defendant is entitled

---

12. Section 2(c) of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13(c), provides as follows: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

13. Massachusetts Brewers Assoc. v. P. Ballantine & Sons Co., 129 F.Supp. 736 (D. C.Mass.1955).

14. Willard Dairy Corp. v. National Dairy Pro. Corp., 309 F.2d 943 (6th Cir. 1962); La Pointe v. Schweigert Meat Co., 282 F.Supp. 974 (Judge Nordbye, D.C.Minn., Oct. 20, 1966); Cream Crest-Blanding Dairies, Inc., v. National Dairy Products, 243 F.Supp. 331 (W.D.Mich.1965); Borden Co. v. F. T. C., 339 F.2d 953 (7th Cir. 1964); Central Ice Cream Co. v. Golden Rod Ice Cream Co., 287 F.2d 265 (7th Cir. 1961).

15. Defendant also moved on the ground of failure to allege transactions in the course of interstate commerce for dismissal of Count III in so far as it purports to state a cause of action for violation of Section 2(d) and (e) of the Clayton Act as amended by the Robinson-Patman Act. The above analysis regarding Section 3 of the Clayton Act indicates that the Court does not consider this a valid ground for dismissal of Count III in so far as it purports to state a cause

to summary judgment with respect to Count III in so far as it alleges violation of Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act because that section expressly applies only "where either or any of the purchases involved in such discrimination are in [interstate] commerce," and no interstate discriminatory sales are alleged in Count III. See Central Ice Cream Co. v. Golden Rod Ice Cream Co., 287 F.2d 265 (7th Cir. 1961).[16]

 Defendant moves for dismissal of Count IV to the extent that it purports to assert a separate cause of action for violation of Section 1 of the Sherman Act on the grounds that (1) it fails to state a claim upon which relief may be granted; (2) it fails to allege sufficient facts regarding direct and substantial effect on interstate commerce; and (3) plaintiff would be *in pari delicto* with respect to any violation alleged in Count IV. Count IV alleges a vertically coerced territorial confinement agreement among Hamm's distributors severely restricting intra-brand competition and substantially restraining interstate commerce. It cannot be said that nothing can be proved in support of this claim which would entitle plaintiff to relief and establish the requisite effect on commerce. See United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (June 12, 1967). Nor can the Court accept the contention that the doctrine of *in pari delicto* precludes plaintiff from basing a claim for relief upon the allegations of Count IV. Coerced adherence to a restraint in violation of Section 1 of the Sherman Act does not place plaintiff *in pari delicto*. Bales v. Kansas City Star Co., 336 F.2d 439 (8th Cir. 1964). It thus appears that defendant is not entitled to dismissal of Count IV.

Upon the foregoing analysis,

It is hereby ordered:

That defendant's motion for summary judgment dismissing Count III herein in so far as it purports to assert causes of action for violation of Section 2(a), (d), and (e) of the Clayton Act as amended by the Robinson-Patman Act is hereby granted. The Court sees no just cause for delay in entering this judgment after ten days have passed from the date this order is signed, during which time the Court will entertain any motion which plaintiff may make to amend Count III. Let judgment be entered accordingly.

It is further ordered:

That all the other motions by defendant pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure for dismissal herein are hereby denied.

---

of action for violation of these subsections.

16. The *Moore* decision cannot save Count III because some of the purchases involved in the discrimination therein were in interstate commerce. Nor does the fact that some of the ingredients used in the

process of manufacturing beer in defendant's St. Paul, Minnesota brewery passed through interstate commerce save Count III, because these ingredients were transformed into an entirely new product. See, e. g., Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851, 860 (9th Cir. 1965).