I. M. SKINNER, an individual, d/b/a Skinner Electrical and Home Supply Company, Appellant,

v.

UNITED STATES STEEL CORPORATION, Appellee.

No. 15761.

United States Court of Appeals Fifth Circuit.

May 15, 1956.

Grover S. McLeod, George E. Trawick, Birmingham, Ala., for appellant.

D. K. McKamy, Birmingham, Ala., C. V. Stelzenmuller, Birmingham, Ala., Burr, McKamy, Moore & Thomas, Birmingham, Ala., of counsel, for appellee.

Before BORAH, TUTTLE, and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, I. M. Skinner, who was the plaintiff in the District Court, operates a retail hardware and appliance store in Fairfield, Alabama, in the Birmingham urban area. The appellee, United States Steel Corporation, which was the sole defendant below, is a large enterprise engaged primarily in the manufacture, sale and distribution of iron and steel and the products and by-products of these metals. Its business is conducted through divisions, one of which is its Tennessee Coal & Iron Division, and through this division the defendant operates mines, steel mills and other works in the Birmingham area, having a large number of employees on its payroll. The defendant owns all of the stock of Union Supply Company, a corporation, which operates a retail store in the trade area served by and in competition with the plaintiff. The defendant, upon written requests of employees, made payroll deductions from wages and paid the sums so deducted to Union Supply Company in payment for employee purchases.

The plaintiff, after some repleading, had before the court a complaint in six counts. In his complaint the plaintiff asserted that the defendant had discriminated against the plaintiff and in favor of his competitor, Union Supply Company, by furnishing the competitor the service of withholding from the wages of defendant's employees the price of goods purchased from the competitor, Union Supply Company, and refusing such service to the plaintiff, which, alleged the plaintiff, violated Section 2(e) of the Robinson-Patman Act, 15 U.S.

C.A. § 13(e). The complaint, as amended, also charged a conspiracy between the defendant and Union Supply Company to discriminate in favor of Union Supply Company and against the plaintiff in violation of Sections 2(a) and 2 (e) of the Robinson-Patman Act.

The appellee made direct sales to Union Supply Company. It made no sales to appellant. The appellant had purchased from wholesalers some merchandise manufactured by appellee of which only a very small portion had ever moved in interstate commerce. The appellee contends, perhaps correctly, that the only item produced by it and acquired by appellant during the applicable period, which ever moved in interstate commerce, was 1 Dozen Mrs. McGregor's Nails, billed by a wholesaler to appellant at an invoice price of .85¢ The appellee filed a motion for summary judgment, affidavits and counter-affidavits were filed, and the appellant's deposition was taken. The court entered a summary judgment for the appellee. From the judgment this appeal is taken. Section 2(a) of the Act is confined to discriminations in price, and no facts are here shown that could be made the basis of invoking its provisions. Section 2(e) of the Act provides:

"It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms." 15 U.S.C.A. § 13(e).

■ It will be noted that the quoted subsection of the statute omits the words, "engaged in commerce," which follow the word "person" in subsections (a), (c), (d) and (f) of this section of the Act. But, as was said by the Court of Appeals of the Eighth Circuit:

"Reading the subsections of section 2 as a whole and also with the criminal provisions of section 3, and viewing the Robinson-Patman Act in its unity and in its interrelation to the Clayton Act, we do not see how any possible doubt can exist that Congress intended that subsection (e), equally with the other subsections of section 2, should apply only to those engaged in interstate commerce, and that the omission of the limitative expression 'engaged in commerce' from the language of subsection (e) was patently inadvertent, but that the words by sound implication are inherent in its general and sectional context." Elizabeth Arden Sales Corporation v. Gus Blass Co., 1945, 150 F.2d 988, 992.

■ The commodities involved which were or might have been in interstate commerce were slight in volume, approaching perhaps the *de minimis* level. In determining whether transactions are in interstate commerce under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., it has been said that the *de minimis* rule applies. Hunter v. Madison Avenue Corporation, 6 Cir., 1949, 174 F.2d 164. It is likewise applicable where the Robinson-Patman Act is invoked. We think it needless here to sift the facts shown by the record to ascertain whether there was substantial quantity of goods sold in interstate commerce in the sale of which there was or might have been competition between Union Supply Company and the plaintiff. Nor do we find it necessary to make any holding as to whether there need be any substantial lessening of competition or any tendency toward a monopoly as an element of a violation of Section 2(e) of the Act as is required under Section 2(a).

The Federal Trade Commission has held that a buyer of a manufacturer's goods from a wholesaler qualifies the

buyer as a "purchaser" from the manufacturer within the contemplation of the Act. Kraft-Phenix Corporation, 25 F. T.C. 537; Luxor, 31 F.T.C. 658. There are judicial decisions reaching a like result. Elizabeth Arden, Inc., v. Federal Trade Commission, 2 Cir., 1946, 156 F. 2d 132; Standard Oil Co. v. Federal Trade Commission, 7 Cir., 1949, 173 F. 2d 210. These were cases where the manufacturer furnished a service in connection with the resale by the retailer of the commodity produced by the manufacturer or maintained a control over the retail sale price. It has been recently held, in a case brought for an alleged violation of Section 2(a) of the Act, that in the absence of any direct relationship between manufacturer and retailer or a control over the relations between jobber and retailer, the retailer would not be regarded as a "purchaser" within the meaning of the Act. Klein v. Lionel Corporation, D.C.Del.1956, 138 F.Supp. 560. The Elizabeth Arden case is not contrary to this holding. There the manufacturer, in furnishing demonstrator service, discriminated between retailers who purchased the manufacturer's product from wholesalers and other retailers who purchased direct from the manufacturer. A direct relationship existed between manufacturer and retailer. Elizabeth Arden, Inc., v. Federal Trade Comm., 2 Cir., 1946, 156 F.2d 132, certiorari denied 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1828.

Here the appellant complains that the store of appellee's wholly owned subsidiary is permitted to take assignments of wages which appellee will honor to cover merchandise purchases and that such privilege is denied to the appellant. The prohibition of Section 2(e) is not against every discrimination, nor even against every discrimination in the course of interstate commerce. The prohibition is against discrimination in the furnishing of "services or facilities connected with the processing, handling, sale, or offering for sale of such commodity". The language is not complex nor are the words technical. Neither the legislative history nor the judicial interpretation of the quoted words requires us to depart from their literal meaning. The service, furnished to Union Supply Company and denied the appellant, does not have any connection with the processing, handling, sale or offering for sale of any of the commodities which may have been sold by the appellee to Union Supply Company where like commodities, manufactured by appellee, were purchased by appellant from a wholesaler. This is a particularly apt situation for the application of the maxim *"expressio unius est exclusio alterius."* In Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320, it was decided that prohibited discrimination resulted where a manufacturer of dextrose supplied advertising for one producer of candy in which dextrose was used, without furnishing a like service to others who made similar products using dextrose. The court found that the use of the dextrose in making candy was a "processing" of the commodity within the meaning of Section 2(e). It was held that the violation could and did occur without any express agreement for the furnishing of the service. In its opinion, the Court said:

"It is enough if the discrimination be made in favor of one who is a purchaser and denied to another purchaser or other purchasers of the commodity." 324 U.S. 744, 65 S.Ct. 970.

So we think the service rendered or facility furnished must be with respect to a specific commodity or in connection with a sale or sales of a specific commodity. We do not believe it was intended by the Congress to require, under the penalties of the Act, that a manufacturer accord to all merchants who might acquire some of its manufactured goods in course of trade, the right to extend credit to the employees of the manufacturer and have payment withheld from their wages, even though such a service was rendered to a competitor. In other words, the services or facilities

that must be made available on proportionally equal terms to all purchasers in competition are merchandising services or facilities. Such not being the situation in the case before us, the judgment is

Affirmed.