**SECATORE'S, INC.,**
v.
**ESSO STANDARD OIL COMPANY.**
Civ. A. No. 58-891-F.

United States District Court
D. Massachusetts.
March 17, 1959.

---

**3.** Delaware & Hudson Co. v. Albany & Susquehanna R. Co., 1909, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862.

666

Arthur Brogna, Harry Bergson, Jr., Boston, Mass., for plaintiff.

Robert W. Meserve, John R. Hally, Nutter, McClennen & Fish, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

Plaintiff brings this action under the provisions of 15 U.S.C.A. §§ 15 and 26 for damages and injunctive relief, alleging violations by defendant of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13. Defendant moves for summary judgment on the basis of the pleadings and the depositions of the plaintiff's president and principal stockholder. The facts as set forth in these documents have not been controverted.

Plaintiff operates two large retail gasoline stations in East Boston. It actually sells only to customers who bring their vehicles to one of its stations where gasoline is pumped into the tanks of the vehicles and has no facilities for delivering or selling off its premises. Defendant is a refiner and distributor of petroleum products. It operates no retail gasoline stations. It sells gasoline to customers who take delivery in their own tank trucks at defendant's refinery and also delivers in its own tank trucks to customers who have storage tanks and pumps on their own premises.

Counts 1 and 3 charge that defendant discriminated in price in viola-

tion of 15 U.S.C.A. § 13(a) [1] by selling to certain direct buying consumers at prices lower than it charged plaintiff. The consumers to whom sales were allegedly made at a lower price are all ultimate consumers, large industrial or commercial users who do not resell any of the gasoline they purchase. None of them has ever been a customer of plaintiff. Plaintiff has never tried to sell gasoline to them and does not have the facilities to deliver gasoline to their tanks as defendant actually does.

Assuming, as alleged, that defendant did sell to these ultimate consumers at a lower price than it sold to plaintiff, such a price differential would not constitute the discrimination in price forbidden by § 13(a) unless it affected competition. The competition affected could only be that between plaintiff and defendant. Admittedly these ultimate consumers who are alleged to have bought gasoline at a lower price are not in competition with plaintiff. There is no claim that competition between plaintiff and other retail gasoline dealers has been affected, since defendant's price to them was always the same as its price to plaintiff. There is a potential competition between plaintiff and defendant as to these ultimate consumers. Although plaintiff has never sold to them or tried to sell to them, and although admittedly he has lost no customer to defendant, nevertheless as ultimate consumers of gasoline they are possible future customers of plaintiff. It is only this potential competition which could possibly have been affected by any price differential offered to these ultimate consumers by defendant.

However, even this potential competition could not actually be affected by the alleged price differential. Clearly there would be no discrimination if defendant sold to these ultimate consumers at the same price at which it sells to plaintiff. But even then plaintiff could not compete with defendant for their business for it would as a matter of practical economics have to charge them more than it paid defendant for the gasoline in order to cover its expenses of operation, to say nothing of making a profit on the transaction. If plaintiff cannot successfully compete with defendant for these customers when there is no price differential, it is not harmed by any further reduction which defendant may make in the price it charges to them. Jarrett v. Pittsburgh Plate Glass Co., 5 Cir., 131 F.2d 674, 676; A. J. Goodman & Son, Inc. v. United Lacquer Mfg. Corporation, D.C., 81 F.Supp. 890, 893. Defendant is under no obligation to sell to plaintiff at a lower price than it charges to consumers who buy directly from it in order to enable plaintiff to compete with it for the business of those customers. But unless it does this, plaintiff will never be able to compete successfully with defendant, at least with respect to price.

In fact, the only claim made by plaintiff's president as to damages actually suffered is his statement that if plaintiff could have bought its gasoline at the lower price allegedly paid by other purchasers, it would have increased its profits by the amount of this price differential. This is, of course, entirely speculative. It assumes that plaintiff could have continued to sell gasoline at

1. "§ 13. Discrimination in price, services, or facilities—Price; selection of customers

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * * *"

the same price while paying less for it, an unlikely eventuality in view of the fact that it was in competition with other retail dealers buying from defendant who would also have to receive the benefit of a lower price from defendant and could therefore lower their retail price. In any event, such a loss of profit would afford no basis for recovery unless it could be shown that it was due to a price discrimination affecting competition. It is clear that the only price differential alleged here has not actually affected competition and further as has been pointed out above, it could not have any effect on potential competition between plaintiff and defendant.

■ Count 2 alleges discrimination by defendant in violation of 15 U.S.C.A. § 13(e) [2] against plaintiff in favor of other purchasers of its gasoline in that defendant since June 1, 1957, has refused to sell to plaintiff, as it does to competing retail sellers of gasoline, on thirty days' credit and has placed plaintiff on a c. o. d. basis. This raises the question of whether the granting or withdrawing of credit is a service or facility with respect to which discrimination is forbidden by § 13(e). The services and facilities referred to are normally those aids connected with processing or handling or resale of the commodity by the purchaser. They include in particular various promotional and merchandising aids connected with resale of the commodity. The extension of credit is not ordinarily thought of as a service or facility of this type. It is connected only with the original sale of the product to a retailer such as plaintiff here and not with any further handling or resale. The extension of credit involves problems not found in the furnishing of ordinary promotional aids. It may involve difficult questions of business judgment as to the future willingness or ability of the customer to pay.

It may entail a possibility of substantial financial loss to the creditor. It may require difficult decisions as to whether to risk financial loss by extending credit or losing a customer's business by denying it.

The facts surrounding defendant's denial of credit to plaintiff in this case are illustrative of some of the difficulties involved. Defendant formerly extended credit to plaintiff on a 30-day basis. Plaintiff's monthly purchases amounted to $50,000 to $60,000. Beginning in 1956 plaintiff began to withhold large sums from its monthly payments on the claim that defendant owed it its legal expenses in connection with other litigation then pending between the parties. Although agreeing on April 1, 1957, to make payment, plaintiff failed to do so. On June 7, 1957, when credit was withdrawn, plaintiff owed defendant $103,045.75 and this sum was not finally paid until August 1957 after defendant had brought suit against plaintiff to recover this amount. Certainly in these circumstances defendant was clearly justified in refusing further credit to plaintiff. It would be absurd to say that § 13(e) would require it to deny credit to all its retailer customers if it wished to protect itself by denying further credit to plaintiff.

The conclusion must be that the extension of credit is not one of the services or facilities covered by § 13(e) and that Count 2 therefore fails to state any claim for relief under that section, and further that even if under any circumstances differentiation between customers as to credit terms might constitute a violation of § 13(e), a justifiable denial of credit such as that which occurred in this case would not be such a violation.

Defendant's motion for summary judgment is allowed.

2. "(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."