**BALDWIN HILLS BUILDING MATERIAL CO., a corporation, Plaintiff,**

v.

**FIBREBOARD PAPER PRODUCTS CORPORATION, a corporation, Defendant.**

**No. 66–1772.**

United States District Court
C. D. California.

April 11, 1968.

---

6. At age 39 one has a life expectancy of 33.07 years according to section 26–12 S.C.Code Ann.

Laurence Berger, Los Angeles, Cal., for plaintiff.

E. Judge Elderkin, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

William P. Gray, District Judge.

The plaintiff, a former customer of the defendant, charges the defendant with price discrimination in favor of the

plaintiff's competitors, in violation of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a).* The matter here to be decided is the defendant's motion for summary judgment.

From the pleadings and affidavits submitted on behalf of the parties, it appears that the alleged discriminatory sales took place between 1962 and 1964, inclusive, during all of which time the plaintiff was a retail dealer in building materials, including gypsum wallboard that it bought from the defendant. The plaintiff's place of business was in Southern California, and all deliveries of wallboard purchased from the defendant were received by the plaintiff in Southern California. With a minor exception hereinafter noted, the same was true with respect to each of the plaintiff's competitors to whom purportedly discriminatory sales were made by the defendant.

All of the wallboard involved in the sales here concerned was delivered from the defendant's plant in Southgate, California. The total sales of wallboard from that plant during the years here concerned amounted to $21,732,000.00. With a minor exception hereinafter noted, all of such wallboard was manufactured at the Southgate location.

■ It is well established that section 2(a) of the Robinson-Patman Act does not apply unless the challenged discrimination occurs in the course of interstate commerce and unless at least one of the sales involved in such discrimination is in interstate commerce. This is apparent from the text of the Act, itself, and is amply confirmed by the authorities. See, for example, Borden Company v. F. T. C., 339 F.2d 953 (7th Cir. 1964), and Rowe, Price Discrimination Under the Robinson-Patman Act (1962). It is to be noted that nothing in the above recital of facts discloses any interstate

* The pertinent portions of the statute are as follows:

"§ 13. * * * (a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for * * * resale within the United States * * *."

aspect to the transactions between the defendant and either the plaintiff or its competitors. The defendant contends that there is no significant involvement with interstate commerce in this case, and bases its motion for summary judgment principally upon that ground.

■ The plaintiff seeks to establish the necessary element of interstate commerce in any one of three ways: First, it points out that the wallboard concerned consisted principally of gypsum rock, which was mined and crushed at the defendant's quarries in Nevada and Colorado. It was thereupon shipped to Southgate, California, where it was further processed and placed between paper sheets and sold. The plaintiff contends that these interstate shipments of gypsum rock caused the resulting wallboard to qualify as having been sold in commerce.

Of course, if the gypsum rock was not substantially changed in character between the time of its shipment into California and its delivery to the defendant's customers, such interstate transportation would be part of the flow of the stream of commerce from quarry to purchaser. The fact that the materials may have come to rest temporarily in the defendant's warehouse in Southgate before sale and delivery, would not affect the interstate nature of the transactions or the application of the Robinson-Patman Act. Standard Oil Co. v. F.T.C., 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951).

However, gypsum rock is not the same as wallboard. The affidavits submitted by the defendant establish that upon receipt of the gypsum rock at the Southgate plant, it is there pulverized into dust, heated and dehydrated, and then subjected to chemical treatments which bring about a gradual recrystallization. In the course of the last mentioned process, and while the substance is still plastic in form, it is placed between special paper sheets on rollers. As the solution crystallizes, it adheres to the paper, and when this has been accomplished, the resulting sheets of wallboard are cut to size and dried. It is apparent from the foregoing that the gypsum is substantially changed in character before it becomes a principal ingredient of the wallboard, and that the articles that were sold to the plaintiff and its competitors had their first existence in California. Thus, the fact that the raw materials used in the manufacture of wallboard were shipped into California does not provide a basis for a claim under section 2(a). Cf. Myers v. Shell Oil Co., 96 F.Supp. 670 (S.D.Cal.1951); compare Foremost Dairies, Inc. v. F.T.C., 348 F. 2d 674 (5th Cir. 1965).

■ The second attempt by the plaintiff to show that " * * * the purchases involved in such discrimination * * * [were] in commerce, * * * " is in reliance upon the fact that during 1962 to 1964, the years here concerned, the defendant did ship a small quantity of wallboard from its plant in Colorado to its plant in Southgate, California. There, it was commingled with the locally produced inventory and sold in due course. The total sales value of the wallboard so shipped into California was approximately $22,000.00, and such shipments were made on infrequent occasions when the stocks of locally manufactured products became suddenly depleted and needed immediate supplementation. Inasmuch as the total sales of wallboard from Southgate during these years amounted to $21,732,000.00, it appears that the portion of such sales that stemmed from out-of-state manufacture was about one-tenth of one percent. Of course, there is no way of knowing whether any of the $22,000.00 worth of wallboard made up any part of the alleged discriminatory sales.

■ It is quite evident that all of the sales and deliveries of wallboard by the defendant to the plaintiff and to the plaintiff's competitors were basically California transactions. If any of those sales involved price discrimination, the laws and the courts of California provide a means of redress. The question here presented is whether the fact that some

of the shipments presumably and incidentally included relatively miniscule quantities of wallboard of out-of-state origin, requires or warrants the conclusion that the case thereby comes within the scope of the Robinson-Patman Act. It seems to me that it does not, and that United States courts should accept jurisdiction under that Act only when the interstate aspects of the sales concerned are relatively significant.

The principle of *de minimis* has been considered on other occasions to be applicable to the Robinson-Patman Act. See Skinner v. United States Steel Corporation, 233 F.2d 762, 764 (5th Cir. 1956); Atlantic Co. v. Citizens Ice, etc. Co., 178 F.2d 453, 458 (5th Cir. 1949); Rowe, Price Discrimination Under the Robinson-Patman Act, 78 (1962). This same valid principle should be applied here.

The third basis upon which the plaintiff seeks to show that the necessary interstate commerce is involved grows out of a sale and delivery by the defendant of about $1,100.00 worth of wallboard from its Southgate plant to a customer in Arizona. According to the plaintiff's affidavits, such wallboard was resold to a builder in Southern California and it was accordingly transported back into this state and used here. The plaintiff contends that the Arizona purchaser received a substantial discount, in comparison to the prices charged the plaintiff, and thus was able successfully to compete with the plaintiff even in the Southern California market.

There is no indication that the defendant was aware, when it made the $1,100.00 sale to the Arizona purchaser, that the wallboard would be sent back into California as part of a sale in competition with the plaintiff. For this reason, and in further application of the *de minimis* principle, I am unable to conclude that this isolated and relatively insignificant transaction serves to make a federal case out of what basically constitutes a local problem. A controversy should have a more substantial interstate aspect than appears here in order to warrant the assumption of jurisdiction by this Court.

The defendant is entitled to summary judgment on the ground that the alleged discriminations were not " * * * in the course of * * * commerce * * *," within the meaning of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). This opinion shall constitute findings of fact and conclusions of law. The Court is filing, contemporaneously herewith, a separate judgment in conformity with this determination.