**LANG'S BOWLARAMA, INC.**

v.

**AMF INCORPORATED, and League Bowling Corporation.**

Civ. A. No. 4382.

United States District Court,
D. Rhode Island.

Jan. 21, 1974.

Robert F. DiPippo, Providence, R. I., for plaintiff.

Hugh Latimer, Warren L. Lewis, of Bergson, Borkland, Margolis & Adler, Washington, D. C., Edward F. Hindle, John H. Blish, Edwards & Angell, Providence, R. I., for AmF and League Bowling Corp.

Peter J. McGinn, of Tillinghast, Collins & Graham, Providence, R. I., for League Bowling Corp.

## DECISION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAY, District Judge.

This is a private antitrust action for treble damages arising under §§ 2 and 3 of the Robinson-Patman Price Discrimination Act, June 19, 1936, 49 Stat. 1526, 1528, 15 U.S.C., §§ 13 and 13a; and § 4 of the Clayton Act, October 15, 1914, 38 Stat. 731, 15 U.S.C., § 15.

In its complaint the plaintiff charges the defendants with discriminatory credit, sales and promotion arrangements in the bowling business. The plaintiff, a Rhode Island corporation, operated Lang's Bowlarama, a 40-lane bowling center in Cranston, Rhode Island. The defendant, League Bowling Corporation, a Rhode Island corporation, was the former owner of the Cranston Bowl, a 64-lane bowling center, also located in Cranston, Rhode Island, and was engaged in competition with the plaintiff's place of business. Both of these parties purchased and leased equipment from the defendant, AMF Incorporated, a New Jersey corporation, and a national manufacturer of bowling equipment and supplies.

In its complaint the plaintiff alleges that the defendant AMF discriminated in its credit policies and practices, its sale of goods and services and its promotional arrangements between the plaintiff and defendant League Bowling; that this discrimination operated in favor of defendant League Bowling and against the interest of and to the detriment of the plaintiff; and that as a result of this discrimination and the effects thereof, plaintiff has suffered damage to its property and business.

The defendants deny all charges of discrimination.

Section 2 of the Robinson-Patman Act, 15 U.S.C., § 13, establishes a comprehensive prohibition of a seller's discrimination between different purchasers of commodities of like grade and quality, where the effect of such discrimination is to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination. This prohibition extends to discrimination as to price (subsection a), commissions, allowances, discounts (subsection c), payments for services or facilities (subsection d), and the furnishing of such services or facilities in connection with the processing, handling, sale or offering for sale of commodities (subsection e).

Section 3 of the Act further proscribes such discrimination in discounts, rebates, allowances, advertising service charges or underselling for the purpose of destroying competition or eliminating a competitor. 15 U.S.C., § 13a.

Section 4 of the Clayton Act, 15 U.S.C., § 15, expressly creates a private cause of action for persons who are injured in their business or property by reason of anything proscribed in the antitrust laws. The damages recoverable in such actions are statutorily established as three times the damages actually sustained. 15 U.S.C., § 15.

This matter is now before the Court on the defendants' motion for summary judgment.

The defendants assert that there is no genuine issue as to any material fact and that they are entitled to judgment in their favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as a matter of law. The defendants allege that there is no evidence to substantiate the charges of the plaintiff; that the undisputed facts clearly demonstrate that the plaintiff's action fails to satisfy several essential prerequisites of the Rob-

inson-Patman Act; and that there is no triable issue of material fact as to any of the claims asserted in this action.

Oral argument was heard on this motion on September 17, 1973, at which time the plaintiff submitted a memorandum in opposition to the motion, asserting that there are genuine issues of material fact and disputing the defendants' legal arguments as to whether the agreed-upon facts indicate violation of the antitrust laws cited in the complaint.

The record of this case discloses that the parties have undertaken extensive discovery since the institution of this action; and the defendants assert that the voluminous record established in this action demonstrates that the plaintiff's claims are "clearly deficient factually and legally." In oral argument defense counsel stated that the defendants admit the factual allegations of the plaintiff, but that such facts reveal no discrimination against the plaintiff in favor of defendant League Bowling, and, further, that these facts do not, as a matter of law, amount to any violation of the Robinson-Patman Act.

Initially the Court may dispose of the plaintiff's claim under § 3 of the Robinson-Patman Act, 15 U.S.C., § 13a. The United States Supreme Court has ruled that a private action for treble damages under § 4 of the Clayton Act, 15 U.S.C., § 15, does not lie as to alleged violations of § 3 of the Robinson-Patman Act, 15 U.S.C., § 13a, since Congress did not make § 3 a provision of the antitrust law for the purposes of the Clayton Act treble damages provisions. Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 382, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958). Thus, for purposes of this motion the Court considers the plaintiff's claim solely under § 2 of the Robinson-Patman Act, 15 U.S.C., § 13.

Despite defendants' oral admission of the factual allegations of the plaintiff, the record and other written materials and oral arguments presented by the parties to the Court in connection with the instant motion do indicate certain areas of disagreement as to the events which are alleged to have occurred.

It is agreed that the plaintiff's "ten pin" bowling establishment was in direct competition with the defendant, League Bowling Corporation's "Ten Pin" bowling center in the business of selling bowling games to the general public and bowling leagues. Furthermore, the parties agree that both of these competitors were AMF "houses," so-called, in that each of them was supplied as to their bowling equipment purchases and leases by the defendant AMF. Additionally there is no dispute that both bowling establishments experienced general financial difficulties in the 1960s, and, specifically, each had trouble meeting its obligations to the defendant AMF.

As to the plaintiff's first claim, that of discriminatory credit arrangements, the record reveals that, contrary to the plaintiff's allegation in its complaint, the defendant AMF never actually entered into a forbearance agreement with the defendant League Bowling. Furthermore, the record also reveals that the defendant AMF's differing treatment of the plaintiff's and defendant League Bowling's debt retirement problems was founded on the disparate financial positions of the two bowling establishments, with particular regard to their relative cash flows.

The facts contained in the record before this Court do show, however, that the defendant AMF did in fact apply differing solutions to the various collection difficulties it experienced with the plaintiff and with the defendant League Bowling. Although the parties are in apparent disagreement as to certain details regarding the actual financial ramifications, the facts clearly indicate that the plaintiff was required to meet its obligations to AMF completely, albeit on a much revised schedule, while the defendant, League Bowling Corporation, was forgiven a substantial part of its debt owed AMF as the result of a "cash out" agreement between it and the defendant AMF.

The legal issue for this Court's determination, as indicated by these undisputed facts, is whether the actual debt retirement requirements imposed by the defendant AMF with respect to the plaintiff and the defendant League Bowling were violative of the Robinson-Patman Act.

In the reported cases involving the extension of differing credit terms to competing customers it has been universally held that such practice did not violate § 2 of the Robinson-Patman Act, 15 U.S.C., § 13. Skinner v. United States Steel Corp., 233 F.2d 762 (5th Cir. 1956); Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 284 F.Supp. 148 (D.Minn. 1967), rev'd on other grounds, 395 F.2d 388 (8th Cir. 1968); Secatore's, Inc. v. Esso Standard Oil Co., 171 F.Supp. 665 (D.Mass.1959).

■ In each of these cases summary judgment for the defendant was entered on the ground that the defendants' credit policies were covered by the provisions of the Robinson-Patman Act, specifically § 2(d), 15 U.S.C., § 13(d), prohibiting discrimination in payments for services or facilities (Clausen, supra); and § 2(e), 15 U.S.C., § 13(e), prohibiting discrimination in the furnishing of services or facilities (Clausen, Secatore's, Inc. and Skinner, supra.) These cases establish uncontradicted precedent for the rule that credit terms are not "services" and "facilities" within the meaning of §§ 2(d) and 2(e) of the Robinson-Patman Act. See Secatore's, Inc., supra, 171 F.Supp. at 668; Skinner, supra, 233 F.2d at 765–766; and Clausen, supra, 284 F.Supp. at 155.

There remains the question as to whether the alleged discriminatory credit procedures violated § 2(a), 15 U.S.C., § 13(a), prohibition against discrimination as to price.

The court in Skinner, supra, indicated that the differing credit arrangements therein were not illegal price discrimination in violation of said § 2(a) of the Act, 15 U.S.C., § 13(a). The court stated at page 764:

"Section 2(a) of the Act is confined to discriminations in price, and no facts are here shown that could be made the basis of invoking its provisions."

In the instant case the differing approaches to the plaintiff's and the defendant League Bowling's debt retirement problems were undertaken well after the initial sales and lease agreements were entered into, and therefore are arguably not related to the actual price charged for the commodities sold.

However, as a result of defendant AMF's debt retirement policies, defendant League Bowling was allowed to "cash out" its debt to AMF. The terms of this "cash out" agreement, which was entered into following the inability of the two parties defendant to agree on terms as to forbearance, were that defendant League Bowling paid $165,000 to completely retire its debt owed to the defendant AMF. The record reveals, however, on the other hand, that the plaintiff was required to amortize its debt completely, and a "cash out" agreement was not reached between the plaintiff and AMF. These differing arrangements arguably amount to illegal price discrimination since the effect of the "cash out" was to allow defendant League Bowling to achieve final ownership of the commodities in question at a lesser cost than that paid by the plaintiff.

However, this belated type of price adjustment—that is, by differing debt retirement arrangements—would appear to be permissible under the terms of said 15 U.S.C., § 13(a), which provides as follows:

"And provided further, That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, . . ."

The record reveals the significant stresses affecting the total bowling retail market during the relevant period,

and the differential reactions of the plaintiff and defendant bowling centers to such stresses with regard to their respective amount of business revenue. The court in *Secatore's, Inc., supra,* noted the pressures on a seller which might lead to the extension of different credit terms to different purchasers. The court held at page 668 of 171 F.Supp. as follows:

". . . The extension of credit involves problems not found in the furnishing of ordinary promotional aids. It may involve difficult questions of business judgment as to the future willingness or ability of the customer to pay. It may entail a possibility of substantial financial loss to the creditor. It may require difficult decisions as to whether to risk financial loss by extending credit or losing a customer's business by denying it."

■ In the light of the judicial recognition of business stresses which may affect credit terms, which in turn might be considered part of the price of the item sold, the express allowance in § 13(a), *supra,* of price differences where market conditions dictate, and the actual conditions prevailing in the bowling market in Rhode Island during the relevant time span, the conduct of the defendant AMF with respect to debt retirement does not amount to a violation of the Robinson-Patman Act's price discrimination provisions, 15 U.S.C., § 13(a).

The undisputed facts clearly reveal that the defendant AMF treated the credit problems of two of its competing Rhode Island customers differently, and extended to one, defendant League Bowling, a "cash out" that was not extended to the other; that is, the plaintiff. However, in the light of the accepted judicial interpretation of the provisions of the Robinson-Patman Act, such credit arrangements do not, as a matter of law, violate § 2 of the Act, 15 U.S.C., § 13.

Therefore, as to the plaintiff's claim regarding alleged discriminatory credit arrangements, the defendants are entitled to the entry of summary judgment in their favor.

The second issue before the Court in considering this motion arises out of the defendant AMF's co-sponsorship, along with the defendant League Bowling, the Professional Bowlers Association, and the Narragansett Brewing Company, of a Professional-Amateur Bowling Tournament at the Cranston Bowl in August of 1969.

The plaintiff contends that this co-sponsorship itself and the sale of approximately 400 bowling balls to the defendant League Bowling, in conjunction with said tournament, were violative of the terms of the Robinson-Patman Act. ⁰

Insofar as the sale of the bowling balls is concerned, the record clearly reveals that they were sold at a price one dollar below the dealer discount price, and that they were sold in conjunction with the tournament held at the establishment of the defendant League Bowling; that is, at the Cranston Bowl. The defendants assert that this price would have been nondiscriminatorily extended to all AMF retailers, including the plaintiff, who did conduct this type of tournament. Thus, this sale is, as indicated by this argument of the defendants and the undisputed facts in the record, inextricably bound up with the special promotional activity—that is, the tournament operation—rather than being a normal sale by AMF to a retailer of its products. Thus, this Court should consider the price discount extended to the defendant League Bowling, as to this sale, as a promotional consideration to be tested under the provisions of §§ 2(d) and 2(e) of the Act, 15 U.S.C., § 13(d) and § 13(e), rather than price distinctions governed by § 2(a), 15 U.S.C., § 13(a).

The defendants argue that since the plaintiff did not operate a retail bowling equipment shop at the time of the sale of said bowling balls, it was not in competition with the defendant League Bowling as to the commodity in question. However, this is irrelevant since,

as indicated above, the Court construes the sale as part and parcel of an effort to promote the bowling sport itself, not simply as an isolated wholesale purchase by a retailer. The plaintiff and the defendant League Bowling were competitors in the sale of bowling games to the public, and any promotional considerations the defendant AMF extended to its customer, defendant League Bowling, inured to its benefit in this general competition.

Thus, the crucial question for this Court is whether this promotional consideration (i. e., the discount on bowling balls) was extended in a discriminatory fashion, in violation of the Robinson-Patman Act. The issue is the same with regard to the promotional consideration extended by the defendant AMF to the defendant League Bowling in connection with its co-sponsorship of said tournament at the Cranston Bowl in 1969.

The undisputed facts clearly reveal that the defendant AMF assumed part of the cost of the tournament and provided certain services which had a monetary value, as part of a promotional effort to promote the bowling sport and its products. As noted above, the Act requires that such payments and such services be available on proportionally equal terms to all customers. Sections 2(d) and 2(e), 15 U.S.C., §§ 13(d) and 13(e).

The record is not entirely clear as to whether this requirement of proportionally equal treatment was adhered to in this instance. The August 1969 tournament at the Cranston Bowl was apparently the only such tournament ever co-sponsored by the defendant AMF; and it is, it seems to the Court, a safe assumption that League Bowling received some business benefit from the holding of this tournament in its establishment.

However, there remains unresolved an issue of fact: whether or not the plaintiff was actually afforded a practical opportunity to avail itself of this promotional consideration and to achieve the same business benefit.

■ Since there is an issue of material fact not resolved by the record before this Court, the defendants are not entitled to the entry of summary judgment in their favor on this issue. The defendants' motion for summary judgment on the plaintiff's claim that the defendant AMF's co-sponsorship of said 1969 tournament and the related sale of bowling balls was discriminatory should be denied.

The Court has herein considered three alleged instances of violations of the Robinson-Patman Price Discrimination Act:

1) discriminatory debt retirement;

2) discriminatory sales price as to 400 bowling balls sold in connection with the Pro-Am Tournament; and

3) discriminatory promotional payments and services extended by defendant AMF in connection with said Tournament.

Counsel for the parties in this action have assembled a formidable record, including extensive interrogatories, depositions and other documentary evidence, to be sifted in determining this motion. The record indicates that these three instances are apparently the sole questioned areas of the defendants' conduct and activity in this case.

As to these alleged instances of violation of the Act there are in this record genuine issues of fact as to the second and third claims.

Under the circumstances the defendants are not entitled to judgment as to those issues as a matter of law.

In its decision in First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), the Supreme Court of the United States held:

"... While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of

action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

In this decision the Supreme Court affirmed a trial court's entry of summary judgment against a plaintiff in an antitrust case.

However, in the instant case the test for dismissal is not met, and the record reveals significant probative evidence tending to support the second and third claims asserted by the plaintiff.

■ Having in mind the general policy of sparingly utilizing summary judgment in antitrust litigation, the defendants' motion for summary judgment in their favor as to the first claim of the plaintiff should be and is granted, and is denied as to the second and third claims asserted by the plaintiff. *See, generally,* Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).