HARPER PLASTICS, INC., a corporation, Plaintiff-Appellant,

v.

AMOCO CHEMICALS CORPORATION, a corporation; Amoco Fabrics Company, a corporation; and Patchogue-Plymouth Company, a Division of Amoco Fabrics Company, Defendant-Appellees.

No. 79–1639.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 26, 1979.

Decided March 17, 1980.

William J. Harte, Chicago, Ill., for plaintiff-appellant.

Walter T. Kuhlmey, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Circuit Judge, WISDOM, Senior Circuit Judge,* and TONE, Circuit Judge.

TONE, Circuit Judge.

■ The sole question we address in this opinion [1] is whether the district court properly granted summary judgment on plaintiff's claim that defendants had violated § 2(e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(e), by refusing an unconditional delivery of goods to plaintiff despite an alleged contract between the parties.[2] The district court granted judgment for defendants on the ground that no "consummated transaction" had taken place and that plaintiff was thus not a "purchaser" within the meaning of § 2(e). We affirm on the ground that the conduct complained of did not constitute the denial of a "service or facility" within the meaning of that subsection.

### Facts

Plaintiff Harper Plastics purchases and resells raw thermoplastic materials and other plastic goods. Defendant Amoco Fabrics manufactures and sells, among other things, a woven carpet backing made of polypropylene plastic. The transaction at issue involved an alleged sale by Amoco Fabrics to Harper of a quantity of polypropylene carpet backing. Harper asserts its claim against both Amoco Fabrics and Fabrics' parent and primary supplier, Amoco Chemicals.[3] Both defendants can be treated as

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The parties have presented other issues on appeal, but our disposition of them does not meet the standards for publication contained in Circuit Rule 35. Accordingly, these issues are addressed in a separate, unpublished order entered contemporaneously with this opinion.

2. The district court's ruling, although designated a dismissal, apparently for failure to state a claim, was made in response to defendant's motion for summary judgment and was based in part, it appears, on affidavits and other materials outside the pleadings. We therefore treat it as a summary judgment entered pursuant to Rule 56. *See* Rule 12(b), Fed.R.Civ.P.; *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam).

3. Harper's complaint alleges violations of § 2(e) by both Amoco Fabrics and Amoco Chemicals or, alternatively, by Amoco Fabrics alone. Patchogue-Plymouth, a division of Amoco Fabrics, is not a legal entity and is not alleged to have violated Harper's § 2(e) rights. No point is made by Amoco Chemicals of the absence of allegations that it was a party to the transac-

one for our purposes and will be referred to jointly as Amoco.

In November of 1974 Amoco and Harper negotiated for the purchase by Harper of a large quantity of polypropylene carpet backing. The parties dispute whether a contract for sale was made. It is undisputed that Harper received a small sample of the material,[4] and that at some point Amoco informed Harper that it was selling the goods on the condition that Harper resell them abroad and not to customers within the United States. After the sample had been delivered, and apparently while the remainder of the goods were in transit, Amoco sought assurance that Harper planned to resell the goods overseas by demanding that Harper disclose the names of its customers. Harper refused to comply with this demand. Amoco then halted the sale, and Harper returned the goods already delivered and received a refund. The instant action followed.

I. *Consummated Transaction Issue*

On the above facts, Harper contends that, because Amoco required no other purchaser of its carpet backing to disclose a customer list to secure delivery, Amoco discriminatorily denied Harper the "service or facility" of an unconditional delivery in violation of § 2(e).[5] The district court found, however, that Harper was not a "purchaser" within the meaning of § 2(e) and that no "consummated transaction" had taken place; on these grounds it entered judgment for Amoco.

In reaching its conclusion, the court first noted that § 2(e) does not prohibit a seller from choosing its customers and from refusing to deal with prospective purchasers to whom, for whatever reason, it does not wish to sell. We agree with this [6] and with

---

tion complained of, so we can assume for present purposes that it accepts responsibility for the conduct of Amoco Fabrics.

4. There appears also to be a dispute as to whether whatever contract may have been made was conditioned on Harper's acceptance of this sample quantity of goods, and, if so, whether Harper accepted or rejected the goods.

5. Section 2(e) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(e), provides,

It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

Harper contends in its brief that Amoco's actions violated "§ 2 . . . and § 2(e) in particular." Harper's argument in the district court in opposition to Amoco's motion for summary judgment was directed exclusively to the § 2(e) issue, as was its argument in its brief to this court. Harper has not properly presented to this court an issue under any other provision of § 2.

6. The Robinson-Patman Act "does not require a seller to create or to maintain a customer relationship with any buyer or prospective buyer." *Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 294 (7th Cir. 1974) (Stevens, J.); *see Chicago Seating Co. v. S. Karpen & Bros.*, 177 F.2d 863, 867 (7th Cir. 1949). *See also, e. g., Purdy Mobile Homes, Inc. v. Champion Home Bldrs. Co.*, 594 F.2d 1313, 1318 (9th Cir. 1979); *Timken Roller Bearing Co. v. FTC*, 299 F.2d 839, 842 (6th Cir.), *cert. denied*, 371 U.S. 861, 83 S.Ct. 117, 9 L.Ed.2d 99 (1962); *Atlanta Trading Corp. v. FTC*, 258 F.2d 365, 372–73 (2d Cir. 1958); *Klein v. Lionel Corp.*, 237 F.2d 13, 14–15 (3d Cir. 1956); *Naifeh v. Ronson Art Metal Works, Inc.*, 218 F.2d 202, 206 (10th Cir. 1954); *Shaw's, Inc. v. Wilson-Jones Co.*, 105 F.2d 331, 333–34 (3d Cir. 1939); *Harlem River Consumers Coop., Inc. v. Associated Grocers of Harlem, Inc.*, 371 F.Supp. 701, 709 (S.D.N.Y.), *aff'd*, 493 F.2d 1352 (2d Cir. 1974) (per curiam); F. Rowe, *Price Discrimination Under the Robinson-Patman Act* 45–46 & 381–82 (1962).

The district court in the case at bar relied in part on that proviso of § 2(a), 15 U.S.C. § 13(a), which states:

[N]othing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade . . . .

This provision is a codification of the rule of *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), *see FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 64, 79 S.Ct. 1005, 1011, 3 L.Ed.2d 1079 (1959), and embodies an exception retained by the Robinson-Patman Act from the Clayton Act, *see* Report of the House Committee on the Judiciary, H.R. Rep.No.2287, 74th Cong., 2d Sess. 11 (1936). Whether the provision applies to sections or

the corollary noted by the court that one must be a "purchaser" to claim the protection of § 2(e).[7] The district court found, however, that Harper was not a purchaser within the meaning of the Act, apparently because, in its view, no consummated transaction had taken place.[8]

We believe a consummated transaction in the sense of a fully executed contract is not required by § 2(e). A complaining party may become a "purchaser" within the meaning of § 2(e) solely by entering into a contract for the purchase of goods for resale.[9] Execution of the contract is unnecessary.

■ Factual disputes as to the existence and terms of an executory contract appear from the record.[10] Accordingly, the sum-

---

subsections of the Robinson-Patman Act other than § 2(a) is, apparently, open to question. *See FTC v. Simplicity Pattern Co., supra*, 360 U.S. at 64–65, 79 S.Ct. at 1011. Because the cases cited in the previous paragraph have read such a rule into § 2(e) as well as other subsections of the Act, we need not address the merits of the statutory basis that arguably is provided by the proviso.

7. "The term purchaser means simply one who purchases, a buyer, a vendee. It does not mean one who seeks to purchase . . . ." *Shaw's, Inc. v. Wilson-Jones Co., supra* note 6, 105 F.2d at 333 (quoted in *Chicago Seating Co. v. S. Karpen & Bros., supra* note 6, 177 F.2d at 867). By its express terms, of course, § 2(e) protects only "purchasers" of goods. One with whom a seller refuses to deal is denied the opportunity to purchase, and is thus beyond the reach of the subsection. Thus the question of the seller's right to refuse to deal is, strictly speaking, irrelevant to § 2(e) issues. *But see American Can Co. v. Bruce's Juices, Inc.*, 187 F.2d 919 (5th Cir.), *modified*, 190 F.2d 73 (5th Cir.), *appeal dismissed*, 342 U.S. 875, 72 S.Ct. 165, 96 L.Ed. 657 (1951).

8. The district court relied on the following language from *Republic Packaging Corp. v. Haveg Indus., Inc.*, 406 F.Supp. 379, 381 (N.D.Ill.1976): "[F]or a plaintiff to show injury under the [Robinson-Patman Act] . . . , consummated transactions are needed . . . ." *Republic Packaging* involved a claim by a buyer that a seller had violated § 2(a) of the Act by refusing to honor a contract for sale at an agreed, nondiscriminatory price and demanding instead a higher, discriminatory price. The court held that the contract at the agreed price did not violate the Act and that the demand for a higher price amounted to an offer to sell at that price and was not, thus, a "consummated transaction." We need not address the correctness of this reasoning; *Republic Packaging* involved no claim that failure to deliver goods in accordance with the original contract was a denial of a service within the meaning of § 2(e).

In the only other case discovered which deals in such terminology in the Robinson-Patman Act context, the Fifth Circuit did not reach the issue of whether "consummated sales" were necessary under the Act. *Stough v. May & Co.*, 484 F.2d 22, 23 (5th Cir. 1973). *Cf.* F.

Rowe, *supra* note 6, at 45 ("completed transactions" are necessary).

9. The terms of the subsection itself proscribe discriminations in, *inter alia*, "contracting to furnish" services or facilities. 15 U.S.C. § 13(e). *See also Aluminum Co. of America v. Tandet*, 235 F.Supp. 111, 114 (D.Conn.1964). *Cf.* U.C.C. § 2–103(1)(a). " 'Buyer' means a person who buys or contracts to buy goods."

One court has apparently held that even a binding contract for sale is unnecessary for one to attain the status of "purchaser" under the Act. *American Can Co. v. Bruce's Juices, Inc., supra* note 7, 187 F.2d at 924. The court reasoned that it should not be necessary to actually purchase goods offered on discriminatory terms to claim the protection of the Act. *Id.* The case was recently cited with apparent approval, *M. C. Mfg. Co. v. Texas Foundries, Inc.*, 517 F.2d 1059, 1067 n.17 (5th Cir. 1975), *cert. denied*, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). It has been read, however, to involve contractual relations not spelled out in the Fifth Circuit's opinion, *Aluminum Co. of America v. Tandet, supra*, 235 F.Supp. at 114, and to be flatly in conflict with the line of cases holding that a seller has the right to refuse to deal with prospective customers, *Republic Packaging Corp. v. Haveg Indus., Inc., supra* note 8, 406 F.Supp. at 381.

The discriminatory services or facilities in question need not, of course, be expressly provided for in the purchase contract itself. *See Corn Products Refining Co. v. FTC*, 324 U.S. 726, 744, 65 S.Ct. 961, 970, 89 L.Ed. 1320 (1945). They need only be accorded to "one who is a purchaser and denied to another purchaser . . . of the commodity." *Id.*

10. Among the matters in dispute are whether Amoco offered the backing and Harper accepted, or whether Harper, by purchase order, offered to purchase it; whether the sale was conditional on resale overseas or on Harper's approval of a sample, and if so whether either condition failed of satisfaction; and whether delivery of the goods was, under the alleged contract, a service to be performed by Amoco. From deposition testimony of Amoco employees alone, material facts concerning the formation of the contract clearly appear to be at issue.

mary judgment cannot be sustained on the ground that no contract for the purchase of the carpet backing had been made.

## II. Services or Facilities Issue

■ Amoco urges, as an alternative ground for affirmance of the judgment, that the failure to deliver the carpet backing was not, as a matter of law, a denial of a "service or facility" within the meaning of § 2(e).[11] Amoco maintains that § 2(e)'s use of the words "services or facilities" encompasses only "merchandising services or facilities," and cites language to that effect from one case, Skinner v. United States Steel Corp., 233 F.2d 762, 765–66 (5th Cir. 1956).[12] Amoco also points to the Federal Trade Commission Guides for Advertising Allowances and Other Merchandising Payments and Services, 16 C.F.R. § 240.5 (1979), which contains a list of services or facilities that the Commission deems covered by the Act.[13] This list, says Amoco, is composed of merchandising services and does not contemplate § 2(e) coverage of a non-merchandising service such as "unconditional delivery." In response, Harper merely asserts, without citation of authority, that the conduct of which it complains is within the scope of § 2(e).

In a case neither party mentions, this court determined that, under some circumstances, delivery is a service within the meaning of § 2(e). Centex-Winston Corp. v. Edward Hines Lumber Co., 447 F.2d 585 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 956, 30 L.Ed.2d 791 (1972), held that furnishing consistently timely delivery services to favored purchasers and consistently late delivery services to a disfavored purchaser constitutes discrimination in the furnishing of a "service" under § 2(e). The court's broadly worded statement of its holding was that § 2(e) "covers discriminatory differences in deliveries." 447 F.2d at 588. Centex-Winston also noted that the FTC Guides to the interpretation of § 2(e) do not purport to be all-inclusive [14] and "are not confined solely to promotional matters." [15] Id. Thus, the court concluded that

11. We may affirm the district court on any ground that finds support in the record. Miller v. Gateway Transp. Co., 616 F.2d 272, 275 n.7 (7th Cir. 1980).

 Amoco also argues in its brief that Harper failed to meet the "in commerce" requirement of § 2(e). Because of our disposition of the "services or facilities" issue, we do not reach this contention.

12. Skinner dealt with a discriminatory denial of credit arrangements; it is thus inapposite to the facts of the case at bar. Because the decision to extend or deny terms of credit often turns on a multiplicity of individual factors, courts have sometimes refused, on policy grounds, to hold credit services within the "services or facilities" language of the Robinson-Patman Act. E. g., Craig v. Sun Oil Co., 515 F.2d 221, 224 (10th Cir. 1975); Secatore's, Inc. v. Esso Standard Oil Co., 171 F.Supp. 665, 668 (D.Mass.1959). Whatever the correctness of this view, cf., e. g., FTC v. Simplicity Pattern Co., supra note 6, 360 U.S. at 60–61, 79 S.Ct. at 1009 (consignment sales may be a "service" within § 2(e)), its underlying rationale does not extend to delivery services.

13. 16 C.F.R. § 240.5 provides, in pertinent part, (a) The following are some of the services or facilities covered by the Act where the seller pays the buyer for furnishing them: Any kind of advertising, including cooperative advertising;

Handbills;
Window and floor displays;
Demonstrators and demonstrations.
 (b) Here are some examples of services or facilities covered by the Act when the seller furnishes them to a customer:
Any kind of advertising;
Catalogs;
Demonstrators;
Display and storage cabinets;
Display materials;
Special packaging, or package sizes;
Accepting returns for credit;
Prizes or merchandise for conducting promotional contests.

14. The Commission took care to introduce its list of covered "services or facilities" with the following caveat:

 These terms have not been exactly defined by the statute or in decisions. The following are merely examples—the Act covers many other services and facilities.
16 C.F.R. § 240.5 (1979).

15. The list includes "special packaging, or package sizes" and "accepting returns for credit." Neither of these services is directly related to promotional or advertising efforts, and they are "merchandising" services only in the sense that they may indirectly further the resale of the goods or render that end more profitable

§ 2(e) should not be "confined to the conventional type of promotional services." *Id.* at 587.

*Centex-Winston* is apparently the only case to have squarely held delivery to be a "service" under § 2(e). It has mèt with some criticism,[16] the merit of which we need not examine to decide the case at bar.[17] Given the holding of *Centex-Winston*, the facts before us still fail to support Harper's § 2(e) claim.

 The conduct of which Harper complains, imposing a condition that resale be overseas and demanding assurances in the form of a customer list, was not discrimination with respect to delivery services; rather, it was a refusal to go forward unconditionally with a sale. It was a breach of the contract of sale, if anything. Section 2(e) requires that the service of delivery itself be made available to purchasers on proportionally equal terms. It does not require that all conditions precedent to a delivery be identical in every transaction in like goods sold for resale. As the gravamen of

Harper's complaint is discrimination with respect to a term of sale not itself a "service" within the meaning of § 2(e), Harper may not bring its case within the subsection by employing the label "delivery."

Section 2(e) does not federalize the law of sales contracts or enforce equality in terms of sale other than those concerning services or facilities. That a delivery is contemplated in connection with a sale does not bring the conditions of the sale within § 2(e). Section 2(e) requires that the terms of the delivery service itself, and not the conditions of the sale, be made equally available.

Because the facts do not show a discrimination in services or facilities, the judgment of the district court on Harper's § 2(e) claim is affirmed.

Affirmed.

for the purchaser. The same can be said of delivery services. *See also FTC v. Simplicity Pattern Co., supra* note 6, 360 U.S. at 60–61, 79 S.Ct. at 1009; *General Foods Corp.*, 52 F.T.C. 798, 826 (1956); *New England Confectionery Co.*, 46 F.T.C. 1041, 1060 (1949); *Luxor, Ltd.*, 31 F.T.C. 658, 664 (1940).

**16.** *See Cecil Corley Motor Co. v. General Motors Corp.*, 380 F.Supp. 819, 848–52 (M.D.Tenn. 1974); Rowe, *Pricing and the Robinson-Patman Act*, 41 Antitrust L.J. 98, 108–09 (1971). Mr. Rowe's view of § 2(e) is explained in F. Rowe, *supra* note 6, at 363–90.

Two other circuits have noted *Centex-Winson* but have not reached the issue of whether delivery is a service within § 2(e). *Purdy Mobile Homes, Inc. v. Champion Home Bldrs. Co., supra* note 6, 594 F.2d at 1317–18; *David R. McGeorge Car Co. v. Leyland Motor Sales, Inc.*, 504 F.2d 52, 54–55 (4th Cir. 1974). *Purdy* involved the claim that a partial refusal to deal by failing to sell plaintiff certain brands of goods while selling such brands to competing retailers amounted to "delivery discrimination" in violation of § 2(e). The Ninth Circuit stated that it need not reach the issue of whether delivery constitutes a service under § 2(e) because the case involved only a permissible refusal to deal. 594 F.2d at 1318. In *McGeorge Car*, defendant supplier of automobiles attempted to induce plaintiff retailer to carry defendant's entire line by delivering only short

supplies of a fast-selling model that defendant did carry. The Fourth Circuit held that such short deliveries were not actionable under § 2(e) because the practice between the parties had been for plaintiff buyer to pick up the cars at their port of entry rather than for defendant supplier to deliver the cars at plaintiff's dealership. 504 F.2d at 55. *See also Diehl & Sons, Inc. v. International Harvester Co.*, 445 F.Supp. 282, 285–86 (E.D.N.Y.1978) (§§ 2(d) and (e)j confined to "advertising and promotional" services in connection with resale; but "extended warranties with greater rates of labor reimbursement" may be covered); *Diehl & Sons, Inc. v. International Harvester Co.*, 426 F.Supp. 110, 123 (E.D.N.Y.1976) ("allocation or timeliness of deliveries" not covered); *Glowacki v. Borden, Inc.*, 420 F.Supp. 348, 355–56, 358–59 (N.D.Ill.1976) (transfer of delivery routes may violate § 2(e); but differences in delivery allowances unrelated to resale are cognizable under § 2(a) and not § 2(e)).

**17.** We imply no indorsement of the criticisms or of their reliance on portions of legislative history taken out of context. *Compare Cecil Corley Motor Co. v. General Motors Corp., supra* note 16, 380 F.Supp. at 849 & 852 *and* F. Rowe, *supra* note 6, at 370 & 377 n.57 *with* 80 Cong.Rec. 8123 & 9418–9419 (1936) *and* Report of the Conference Committee, H.R.Rep.No. 2951, 74th Cong., 2d Sess. 5 (1936).