**CENTEX–WINSTON CORPORATION,**
Plaintiff-Appellant,

v.

**EDWARD HINES LUMBER CO.,**
Defendant-Appellee.

No. 18926.

United States Court of Appeals, Seventh Circuit.

Aug. 25, 1971.

Rehearing Denied Sept. 13, 1971.

---

1. See NLRB v. Amalgamated Clothing Workers of America, 430 F.2d 966 (5th Cir. 1970).

Jerome H. Torshen, Lawrence H. Eiger, Jerome H. Gerson, Daniel N. Epstein, Chicago, Ill., for plaintiff-appellant; Yacker, Gerson & Epstein, Jerome H. Torshen, Ltd., Chicago, Ill., of counsel.

Charles B. Mahin, Richard L. Reinish, Chicago, Ill., for defendant-appellee; Price, Cushman, Keck & Mahin, Chicago, Ill., of counsel.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal involves the question whether Section 2(e) of the Robinson-Patman Act (15 U.S.C. § 13(e)) prohibits a seller from furnishing discriminatory delivery services to competing buyers. Before trebling under Section 4 of the Clayton Act (15 U.S.C. § 15), the plaintiff sought $230,000 for damages allegedly sustained by defendant's violation of Section 2(e) of the Robinson-Patman Act.

Plaintiff is a Chicago area builder and developer of homes and has its principal office in Palatine, Illinois. From 1968 to August 1969, it purchased lumber from defendant to resell, after processing, in completed houses. Plaintiff alleged that from May 1968 to August 1969, defendant engaged in a continuous course of discrimination against plaintiff by consistently delivering lumber to plaintiff behind contractual schedules while delivering it to plaintiff's competitors "in preference to plaintiff." This purported discrimination in furnishing delivery services provides the basis for plaintiff's claim to damages.

The district court granted defendant's motion to dismiss the complaint on the ground that a discrimination in deliveries does not violate Section 2(e) of the Robinson-Patman Act. We reverse.

Section 2(e) of the Robinson-Patman Act provides as follows:

"It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so

purchased upon terms not accorded to all purchasers on proportionally equal terms."

Defendant quite accurately observes that thus far Section 2(e) of the Robinson-Patman Act has not been overtly construed to apply to differences in delivery services. To that extent, this is a test case. Rather than attempting to justify its prompter lumber deliveries to other builders, defendant rests on the contention that Section 2(e) does not apply to consistent, preferential differences in the timeliness of delivery services because (1) these are not promotional services and (2) they are not "connected with the * * * sale" of lumber by plaintiff. We cannot agree.

As to defendant's first argument, the statute covers the furnishing of "any services or facilities." We must not construe this Section in a manner that strains its language and runs counter to the broad goals which Congress intended to effectuate. Federal Trade Commission v. Sun Oil Co., 371 U.S. 505, 515, 83 S.Ct. 358, 9 L.Ed.2d 466; Federal Trade Commission v. Fred Meyer, Inc., 390 U.S. 341, 349, 88 S.Ct. 904, 19 L.Ed.2d 1222. As pointed out by Representative Patman, one of the authors of the legislation, Section 2(e) "is directed against discriminatory treatment of purchasers engaged in the resale of the seller's goods." Patman, Complete Guide to the Robinson-Patman Act, p. 140 (1963). It unqualifiedly makes unlawful business practices other than price discriminations.[1] Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 65, 79 S.Ct. 1005, 3 L.Ed.2d 1079. The House Conferees' Report states that Section 2(e) prohibits "the furnishing of any services or facilities by a seller to a buyer upon terms not accorded to all buyers on proportionally equal terms." H.R.Rep.No.2951, 74th Cong., 2d sess. (1936), p. 7. While it is true that the legislative history of the statute and the cases thereunder sometimes describe these as promotional services or facilities,[2] consistently faster deliveries by defendant to plaintiff's competitors would obviously promote and facilitate their resales of lumber. Section 2(e) should not be confined to the conventional type of promotional services such as window displays, demonstrators, exhibits and prizes, for Section 2(d), and therefore its companion Section 2(e), was "made intentionally broader than this one sphere [payments for advertising and promotional services] in order to prevent evasion in resort to others [nonadvertising and nonpromotional services] by which the same purpose might be accomplished * * *." 80 Cong.Rec. 9418. Section 2(e) was meant to cover "advertising, sales, and other services and facilities * * *." Idem. As we said of this Section in Corn Products Refining Co. v. Federal Trade Commission, 144 F.2d 211, 219 (7th Cir. 1944), affirmed, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320, "We think Congress, when it forbade extension of special facilities to one purchaser not accorded to others, intended to forbid special favors to one purchaser over competitors in all cases where goods are sold and resold * * *." Moreover, in Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 60, 79 S.Ct. 1005, 3 L.Ed.2d 1079, under Section 2(e) the Supreme Court condemned Simplicity's payment of all transportation costs in connection with its business with variety stores where none was paid on its fabric-store transactions. If it was a violation of Section

1. For this reason, we cannot accept the district court's view that Section 2(e) applies only where a party was "differentially discriminated against as to the price of the commodity which he was purchasing."

2. Report of the Attorney General's National Committee to Study the Antitrust Laws (1955), p. 191; 1968 Supplement to said Report, pp. 147–148, and Pocket Part Supplement, p. 31; Rowe, Price Discrimination Under the Robinson-Patman Act (1962), pp. 363, 365, 366, 367, 368, 369, 372, 376, 377–381, and 1964 Supplement, p. 81.

2(e) for Simplicity to absorb such transportation costs, it would likewise be a violation for defendant to discriminate in the actual deliveries here.[3]

■ The use of the terms "processing" and "handling" in Section 2(e) also shows that Congress meant to ban the use of discriminatory practices, even though not of a typically sales promotional nature. Accordingly, in its 1969 guidelines on the Robinson-Patman Act, after referring to promotional payments and services, the Federal Trade Commission stated that Section 2(e) applies to the seller of products in interstate commerce if he either directly or through an intermediary furnishes services or facilities to a customer who competes with any other customer in the resale of the seller's product of like grade and quality. The examples provided are not confined solely to promotional matters, and the Commission took care to explain that the list was not meant to cover every situation. 1 CCH Trade Regulation Reporter ¶ 4063, pp. 6094–6096 (1969).

As to defendant's second argument, the statute does only prohibit the furnishing of discriminatory services or facilities "connected with the processing, handling, sale, or offering for sale" of a commodity.[4] However, a discrimination in the furnishing of deliveries would impede the resale of the commodity, as alleged in this complaint. It cannot be persuasively said that the continuous and consistent variances in these delivery times were not connected with the resale of the lumber within the meaning

of Section 2(e).[5] We therefore reject Secatore's, Inc. v. Esso Standard Oil Co., 171 F.Supp. 665, 668 (D.Mass.1959), to the extent that it may be inconsistent herewith.

Defendant's argument that its business would suffer if Section 2(e) were applied to discriminatory deliveries was answered in Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079. After noting that one of the purposes of Section 2(e) was to condemn secret discriminations, the Supreme Court pointed out that the courts are not in a position to review the economic wisdom of Congress, which apparently intended to force sellers "to confine their discriminatory practices to price differentials, where they can be more readily detected and where it would be much easier to make accurate comparisons of any alleged cost savings." 360 U.S. at pp. 67, 68, 79 S.Ct. at p. 1013.

■■ Our decision that Section 2(e) covers discriminatory differences in deliveries does not necessarily carry the day for plaintiff. For the statute to be applicable, the favored customers must be competitors of the plaintiff. Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 62–63, 79 S.Ct. 1005, 3 L.Ed.2d 1079. On remand, defendant may be able to justify the differences in delivery, if any, under the meeting competition defense contained in Section 2(b), which applies to a charge of violating Section 2(e) and eliminates defendant's bogeyman, the stifling of com-

3. In Sano Petroleum Corp. v. American Oil Co., 187 F.Supp. 345 (E.D.N.Y.1960) and United Banana Co., Inc. v. United Fruit Co., 245 F.Supp. 161 (D.Conn. 1965), affirmed, 362 F.2d 849 (2d Cir. 1966), two district courts implied that delivery services were within the ambit of Section 2(e).

4. Rowe, op. cit., pp. 372, 376, 381–385; Millstein, "Sections 2(d) and (e) Robinson-Patman Act—Compulsory Universal Reciprocity," 37 Anti-trust Law Journal 77, 80 (1967).

5. Defendant's principal reliance is on Chicago Spring Products Co. v. United States

Steel Corp., 254 F.Supp. 83 (N.D.Ill. 1966), affirmed, 371 F.2d 428 (7th Cir. 1966). As the district court stated, that case is "not applicable or helpful here," for it dealt with freight allowances or rebates which come within the ban of Section 2(a) rather than Section 2(e). It would be incongruous to hold such price differentials also to be within Section 2(e), for "Congress intended to strike down freight discriminations which are an element of 'price' *only* when those discriminations have an adverse effect on competition or cannot be cost justified as provided for in section 2(a)." 254 F. Supp. at p. 85.

petition. Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 67, 79 S.Ct. 1005, 3 L.Ed.2d 1079; Shulton, Inc. v. Federal Trade Commission, 305 F.2d 36 (7th Cir. 1962); Exquisite Form Brassiere Inc. v. Federal Trade Commission, 112 U.S.App.D.C. 175, 301 F.2d 499 (1961), certiorari denied, 369 U.S. 888, 82 S.Ct. 1162, 8 L.Ed.2d 289. Furthermore, defendant may be able to show that it had not actually adopted any delivery plan that discriminated against plaintiff, or that the discriminations were so *de minimis* or spasmodic that they were not within the ban of the statute. The seller need only make its services and facilities available to its customers in proportion to the capacity of each customer to participate in or employ the advantage. Federal Trade Commission v. Simplicity Pattern Co., 360 U.S. 55, 61–62, n. 4, 79 S.Ct. 1005, 3 L.Ed.2d 1079; Rowe, op. cit., pp. 371–372, 404–405, 408; 80 Cong.Rec. 9418. Thus to avoid the applicability of Section 2(e) to preferential differences in delivery times, sellers can formulate and announce delivery plans that will satisfy the "proportionally equal terms" requirement of the statute. See Patman, Robinson-Patman Act, p. 89 (1938). Indeed, this defendant may be able to show that its deliveries to plaintiff and its competitors satisfied that requirement. See Rowe, op. cit., pp. 399–414.[6]

If plaintiff can prove the allegations of its complaint, it would have a state court remedy for breach of contract. But this does not mean there is no federal remedy under Section 2(e) if it can prove damage from the alleged continuous course of discrimination against it by the consistent grant of preferential delivery services to its competitors by defendant.[7]

Reversed and remanded.

6. Even plaintiff concedes that it must prove the following in order to prevail:

"Plaintiff has the burden of showing that it competed with other builders and developers who allegedly received favorable deliveries. Plaintiff must also show that defendant's sales to it and its competitors were reasonably contemporaneous, and involved goods of like grade and quality. Moreover, plaintiff must show not merely that its competitors received lumber in preference to plaintiff but that defendant did not make such deliveries available to it on a basis 'proportionally equal' to its competitors. Finally, under Section 4 of the Clayton Act (15 U.S.C. § 15), plaintiff must show that it was injured in its business and property by the discrimination." (Reply brief, pp. 16–17; footnotes omitted.)

7. See Henry G. Meigs, Inc. v. Empire Petroleum Company, 273 F.2d 424, 431 (7th Cir. 1960).