In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 15-3001

WOODMAN'S FOOD MARKET, INC.,

*Plaintiff-Appellee,*

*v.*

CLOROX COMPANY AND CLOROX SALES COMPANY,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14-cv-734-slc — **Stephen L. Crocker**, *Magistrate Judge.*

_____

ARGUED FEBRUARY 12, 2016 — DECIDED AUGUST 12, 2016

_____

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
BLAKEY, *District Judge.**

WOOD, *Chief Judge*. Does size matter? Not always, as this
case illustrates. The dispute before us arose when Clorox de-
cided to sell the largest-sized containers of its products only

_____

* Of the Northern District of Illinois, sitting by designation.

to discount warehouses such as Costco and Sam's Club. Ordinary grocery stores, including plaintiff Woodman's Food Market, had to content themselves with smaller packages. Taking the position that package size is a promotional service, Woodman's sued Clorox for unlawful price discrimination under subsection 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e). The district court denied Clorox's motion to dismiss for failure to state a claim. Later it rejected Clorox's motion to dismiss the case on mootness grounds. After that, the district court certified both rulings for interlocutory appeal under 28 U.S.C. § 1292(b). We accepted the appeal, and we now reverse.

## I

The facts are simple and undisputed. The defendants, The Clorox Sales Company and The Clorox Company (collectively "Clorox") produce and sell a range of consumer goods. The plaintiff, Woodman's Food Market, Inc., is a local grocery store with 15 locations in Wisconsin and Illinois; it purchases goods from Clorox and sells them to its customers. Clorox sells some of its products in "large packs," such as 40-ounce salad dressing bottles, 460-count plastic food-storage bags, and 42-pound cat litter containers. The large packs tend to have a lower unit price than smaller versions of the same product. They also provide consumers with the convenience of needing to shop less frequently.

For a time, Clorox sold large packs to many grocery stores, including Woodman's. But in 2014 Clorox announced that effective October 1 it would sell large packs only to wholesale discount clubs. Clorox believed that "simplify[ing] its go to market strategy" would let it "streamline operations" and maximize sales. What was good for Clorox, however, was not necessarily good for Woodman's and its ilk, who were forced

to offer their customers only the less convenient and more expensive (measured by unit price) items.

Woodman's responded with this lawsuit, in which it alleged that Clorox's refusal to sell it large packs amounts to unlawful price discrimination under the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (d), (e). Subsection 13(a) prohibits price discrimination where the effect of that discrimination "may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person" who itself or whose customers benefit from the discrimination. Any price discrimination that is concealed as promotional "services or facilities" (provided directly or reimbursed) is also prohibited, see *id.* § 13(d), (e), whether or not it interferes with competition, unless the payments or the actual services are available on proportionally equal terms to all. Woodman's alleges that the size of Clorox's large packs is a promotional "service," and therefore that Clorox's refusal to sell large packs to Woodman's is prohibited by subsections 13(d) and (e). It seeks only injunctive relief.

Woodman's claims were sharpened as the litigation progressed. First it abandoned its straightforward price-discrimination claim under subsection 13(a). The district court then ruled that its promotional-service claim arose under subsection 13(e), which covers the direct provision of services or facilities, rather than under subsection 13(d), which covers payments for services or facilities. The difference was immaterial, the court thought, because the two subsections traditionally have been analyzed identically. Woodman's claims, it thought, fit better under subsection (e). Woodman's accepted that interpretation, and so on appeal it relies exclusively on subsection 13(e).

Clorox moved to dismiss Woodman's complaint for failure to state a claim, arguing that product size is not a "service" or "facility" for purposes of subsection 13(e). See FED. R. CIV. P. 12(b)(6). The district court denied the motion, relying on administrative materials from the Federal Trade Commission (FTC, or Commission) and two old FTC decisions—one from 1940 and one from 1956—holding that product size can be a promotional service under subsections 13(d) and (e). The court noted that the FTC has never renounced these decisions.

After the motion to dismiss was denied, Clorox stopped selling any products to Woodman's. It then filed a motion to dismiss Woodman's complaint as moot; the court construed this as a motion to dismiss for lack of subject-matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Clorox argued that because Woodman's no longer purchased *any* products from Clorox, it was no longer a "purchaser" within the meaning of subsection 13(e). The court, citing *FTC v. Fred Meyer, Inc.*, 390 U.S. 341 (1968), denied the motion because Woodman's could still purchase Clorox products from other suppliers (and allegedly was doing so indirectly). The district court then certified its two orders denying Clorox's motions to dismiss as appropriate for interlocutory appeal under 28 U.S.C. § 1292(b). Clorox filed a timely petition to this Court for permission to appeal, which we granted. (The district court also granted Woodman's motion to amend its complaint to invoke section 1 of the Sherman Act, 15 U.S.C. § 1, but it stayed further proceedings on that claim pending this appeal).

**II**

"Interbrand competition … is the 'primary concern of antitrust law.'" *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 180 (2006) (quoting *Continental T.V., Inc. v.*

*GTE Sylvania Inc.*, 433 U.S. 36, 51–52 n.19 (1997)). "Primary" concern does not mean "exclusive" concern, however, and so we find in the antitrust laws some doctrines that address intrabrand competition—that is, competition within a single brand. The Robinson-Patman Act is one such statute. Its fit with antitrust policy is awkward, as it was principally designed to protect small businesses, but the Supreme Court has told us that the Act should not be understood as an exception from the consumer-welfare norm that animates the antitrust laws. See *id.* at 180–81; see also *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 221 (1993) ("the Robinson-Patman Act should be construed consistently with broader policies of the antitrust laws" (internal quotation marks omitted)).

The Robinson-Patman Act was passed in 1936 as an amendment to the Clayton Act of 1914. The Clayton Act initially banned price discrimination—by which it meant the practice of selling the same product at a different price to different purchasers—when such discrimination harmed competition or was based on a different quantity sold. *FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 68–69 (1959). The Robinson-Patman Act was designed to tighten these rules. *Id*. First, while it retained the Clayton Act's prohibition on differential pricing when that pricing would "substantially lessen competition," it went further, by prohibiting differential pricing based on quantity except when different price levels were justified by "differences in the cost of manufacture, sale or delivery resulting from the different methods or quantities" purchased. 15 U.S.C. § 13(a).

Second, the Robinson-Patman Act introduced a *per se* ban on one method that manufacturers had used to circumvent

subsection 13(a): concealing price discrimination as a promotional service provided to the purchaser. Congress found that manufacturers had been providing valuable services, such as paying for the purchaser's advertisements, to preferred purchasers (usually large chain stores) as a way to provide a discount without running afoul of subsection 13(a). *Simplicity Pattern Co.*, 360 U.S. at 69; *Fred Meyer, Inc.*, 390 U.S. at 351 (noting that purchasers were able to "shift to [the manufacturer] substantial portions of [their] own advertising cost[s]"). In order to close that perceived loophole, the Robinson-Patman Act categorically forbids any manufacturer from "discriminat[ing] in favor of one purchaser against another purchaser … by … furnishing … any services or facilities connected with the processing, handling, sale, or offering for sale" of the product, without making the same terms available to all purchasers. 15 U.S.C. § 13(e). Subsection 13(d) goes hand-in-hand with subsection 13(e) by forbidding reimbursement for the same. Moreover, under subsections 13(d) and (e), unlike subsection 13(a), a plaintiff need not show that providing these "services or facilities" "substantially lessen[ed] competition."

Woodman's advances two arguments for why Clorox's large packs are "services or facilities" covered by subsection 13(e): first, because of the unit discount that goes along with the larger package size, and second, because of the convenience to shoppers of purchasing a larger product. We consider these in turn.

A

The Supreme Court regularly reminds us that the antitrust laws protect competition, not competitors. *E.g.*, *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990). We must therefore interpret subsections 13(d) and (e) in that light.

The relation between these two subsections and subsection 13(a) also informs our understanding of the latter two subsections. Subsections 13(d) and (e) exclude claims that could fall within subsection 13(a). See *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 910 (7th Cir. 1973) (rejecting the "theory that §§ [13(d)] and [13(e)] proscribe acts which are themselves prohibited by § [13(a)]"); *Chicago Spring Prods. Co. v. U.S. Steel Corp.*, 371 F.2d 428, 429 (7th Cir. 1966). If that were not the case, the requirement of a substantial lessening of competition in subsection 13(a) could be avoided in every case that also fits the criteria of subsections 13(d) and (e). And that requirement is essential to the overall operation of the statute: without it, the Act could "give rise to a price uniformity and rigidity in open conflict with the purposes of other antitrust legislation." *Automatic Canteen Co. of Am. v. FTC*, 346 U.S. 61, 63 (1953) (with respect to § 13(f), which prohibits a buyer from inducing or receiving unlawful price discrimination). Subsections 13(d) and (e) target only a narrow band of conduct that Congress identified as a problem: the provision of advertising-related perks to purchasers as a way around subsection 13(a)'s prohibition on price discrimination.

To the extent that Clorox's bulk packaging is viewed as a quantity discount, it must be analyzed under subsection 13(a), not 13(e) as Woodman's urges. See *Centex-Winston Corp. v. Edward Hines Lumber Co.*, 447 F.2d 585, 588 n.5 (7th Cir. 1971). As we explained in *Centex-Winston* "[i]t would be incongruous to hold such price differentials also to be within [subsection 13(e)] for 'Congress intended to strike down freight discriminations which are an element of 'price' only when those discriminations have an adverse effect on competition … as provided for in [subsection 13(a)].'" *Id.* (quoting *Chicago Spring Prods. Co. v. U.S. Steel Corp.*, 254 F. Supp. 83, 85 (N.D. Ill. 1966)).

And while the Supreme Court has not said this in so many words, it has analyzed claims relating to bulk-purchasing discounts only under subsection 13(a), not under 13(d) or (e). See, *e.g.*, *Brooke Grp. Ltd.*, 509 U.S. at 216–17 (1993); *United States v. Borden Co.*, 370 U.S. 460, 463 (1962); *FTC v. Morton Salt Co.*, 334 U.S. 37, 39–41 (1948).

B

Woodman's second argument—that the convenience of large packs is a "service or facility"—fails as well, but for different reasons. The history of the Act and the reasoning of our sister circuits and the Commission demonstrate that only *promotional* "services or facilities" fall within subsection 13(e). And the logic of the Act as a whole convince us that package size alone is not a promotional "service or facility."

As we have already noted, Congress's purpose in enacting subsection 13(e) was to close off the possibility of circumventing subsection 13(a) by concealing price discrimination as advertising benefits. See *Fred Meyer, Inc.*, 390 U.S. at 350–51. As the Supreme Court recognized in *Fred Meyer*, Congress found that manufacturers would, for example, pay the advertising costs of preferred purchasers in order to given them a *de facto* discount without running the risk of violating subsection 13(a). *Id.* (citing S. Rep. No. 1502, 74th Cong., 2d Sess., 7 (1936); H.R. Rep. No. 2287, 74th Cong., 2d Sess., 15–16 (1936)). Heeding this context, every other circuit to consider the issue has held that the terms "services or facilities" in subsection 13(e) refer only to those services or facilities connected with promoting the product, rather than sweeping in any attribute of the product that makes it more desirable to consumers. For example, the Fourth Circuit reads the word "services" in subsection 13(e) "as advertising, promotional, or merchandising

services." *Hinkleman v. Shell Oil Co.*, 962 F.2d 372, 379 (4th Cir. 1992) (internal quotation marks omitted); see also *Purdy Mobile Homes, Inc. v. Champion Home Builders, Co.*, 594 F.2d 1313, 1317 (9th Cir. 1979); *Skinner v. U.S. Steel Corp.*, 233 F.2d 762, 765–66 (5th Cir. 1956); *cf. L & L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1118–19 (5th Cir. 1982) (noting that most courts and commentators consider § 13(e) limited to "promotional" activities, arrangements, or favors).

Our cases point in the same direction. In *Kirby v. P.R. Mallory & Co.*, we said that subsections 13(d) and (e) govern "promotional allowances," while subsection 13(a) addresses direct price discrimination. 489 F.2d at 909–10. We commented further that "Congress carefully considered the deficiency in the original law proscribing price discrimination in the supplier-customer sale and drafted [subsections 13(d)] and [13(e)] to apply exclusively to promotional discriminations like those alleged in this case." *Id.* at 910–11.

*Centex-Winston* also supports interpreting "services or facilities" to refer only to promotional services or facilities, although some dicta in that opinion could be interpreted otherwise. We held there that a plaintiff stated a claim under subsection 13(e) when he alleged that a manufacturer routinely delivered products to his competitors on time, while its deliveries to him were late. 447 F.2d at 587. We said that "consistently faster deliveries by defendant to plaintiff's competitors would obviously promote and facilitate their resales of lumber. [Subection 13(e)] should not be confined to the conventional type of promotional services such as window displays, demonstrators, exhibits and prizes." *Id.* We reasoned that because the Supreme Court held in *Simplicity Pattern Co.*, 360 U.S. at 60, that paying for delivery to some purchasers and not

others violated subsection 13(e), providing on-time delivery to some purchasers and not others must also violate that part of the Act. While we also commented that services or facilities for purposes of subsection 13(e) "are not confined solely to promotional matters," that was an unnecessary aside and was based on an interpretation of FTC materials that the FTC has disclaimed. *Centex-Winston*, 447 F.2d at 588.

The Commission now takes the view that subsections 13(d) and (e) pertain only to promotional services or facilities. Package size alone, it urges in an *amicus curiae* brief in this case, "is not a promotional service or facility." Its reasoned opinions deserve our respectful consideration. See *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 1345 (1944)); 16 C.F.R. § 240.1 (stating that FTC interpretations of the Act "do not have the force of law"). This is so even though its interpretation of the Robinson-Patman Act is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Beginning in 1960, the Commission has released nonbinding guidelines to help businesses comply with subsections 13(d) and (e). See 16 C.F.R. §§ 240.1–240.15. These became known as *Fred Meyer* Guides following the Supreme Court's decision in *Fred Meyer, Inc.*, *supra*, 390 U.S. 341. The current version of these Guides states that subsection 13(e) prohibits only "promotional" services or facilities, that is, those "used primarily to promote the resale" of the manufacturer's product to the consumer, as opposed to the original sale from the manufacturer to the purchaser. See 16 C.F.R. § 240.7; see also *id.* § 240.2 (subsections 13(d) and (e) apply only "in connection with the resale" of manufacturer's products). The Guides pro-

vide examples of such promotional services or facilities, including, as relevant here, "special packaging, or package sizes." But, as the Commission states in its *amicus curiae* brief, these references in the Guides to packaging do not mean that the Commission views package size alone as a "service or facility" within the meaning of section 13(e).

The Commission's position is a logical one: if the convenience of a large pack were a promotional "service or facility" simply because the size made it more attractive to customers, then nearly *all* product attributes would be "services or facilities" covered by subsection 13(e). It is hard to think of an aspect of a product that is not designed to appeal to consumers—the point of a consumer product, after all, is to be bought and sold. If *any* product attribute that made the product more desirable automatically became a promotional "service or facility" by virtue of that fact, then subsection 13(e) would cover all products. This would undermine the balance that Congress has struck between subsection 13(a)'s broad prohibition (which is limited by the need to show harm to competition) and subsection 13(e)'s narrow but categorical prohibition. Moreover, such an interpretation of section 13(e) would wipe out the seller's discretion to choose which products to sell to whom. See *United States v. Colgate & Co.*, 250 U.S. 300 (1919). No court has ever held that the Robinson-Patman Act goes that far, and we have no inclination to be the first.

Woodman's relies on two opinions from the Commission that express a view contrary to the one the Commission advances today: *Luxor, Ltd.*, 31 F.T.C. 658, 664 (1940), in which the Commission held that a manufacturer violated subsection 13(e) when it sold "junior-sized" cosmetics to some purchasers but not others; and *General Foods Corp.*, 52 F.T.C. 798, 826

(1956), in which it followed *Luxor* with respect to coffee packages of different sizes. These decisions would support Woodman's position, if they were still good law. But the Commission has expressly repudiated them, in light of intervening Supreme Court decisions and developments in antitrust policy. It now believes, consistently with the cases we cited earlier, that subsections 13(d) and (e) must be narrowly construed so as to be consistent with the purposes of the Act and antitrust law as a whole.

This leaves Woodman's without a leg to stand on. Size alone is not enough to constitute a promotional service or facility for purposes of subsection 13(e); any discount that goes alone with size must be analyzed under subsection 13(a); and the convenience of the larger size is not a promotional service or facility. This is not to say that it would be impossible under different facts to imagine package size or design as part of a "service or facility" when combined with other promotional content. For example, the Commission distinguishes football shaped packages offered just before the Superbowl, or Halloween-branded "fun-size" individually wrapped candies near Halloween, from Clorox's large packs. These examples could fall within subsection 13(e), but they are not before us today. Only Clorox's refusal to sell large packs to Woodman's is before us, and that, we decide, is not forbidden by subsection 13(e).

## III

Clorox also argues that Woodman's complaint must be dismissed because Woodman's no longer buys *any* products from Clorox and therefore is not a "purchaser" under subsection 13(e). Woodman's responds that it is an indirect purchaser under *Fred Meyers.* Although Clorox raised this claim

as a jurisdictional argument below, it does not do so here. That was a wise choice: as the Supreme Court has recently held, the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III standing or jurisdiction. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). The district court rejected Clorox's motion to dismiss on mootness grounds. Understood as a ruling under Rule 12(b)(6), this too must be reconsidered on remand.

We REVERSE the district court's denial of Clorox's motion to dismiss for failure to state a claim and its order rejecting Clorox's argument that Woodman's no longer has any rights under the statute and REMAND for further proceedings consistent with this opinion.